Lorenz Reich, Appellant, Respondent, v. Eva S. Cochran and Others, as Executors and Trustees of the Trust Created by the Last Will and Testament of William F. Cochran, Deceased, Respondents, Appellants. (Actions Nos. 1 and 2 consolidated.)*

*Usury — an agreement to allow legal interest on a loan and also the use of apartments in a hotel is usurious — an attorney may in summary proceedings authorize another attorney to appear for him — when such proceedings cannot be attacked in an independent collateral action — proof that jurisdictional facts, alleged and not controverted, were untrue — presumption against fraud — proof that an adjudication was induced by fraud — negligence of an attorney as a ground for setting aside a judgment — a motion to be relieved therefrom should be made in the action in which the negligence occurred — a judgment will not be vacated simply because it is unjust — what fraud justifies a collateral attack on a judgment in a court of equity.*

Where a creditor, when making a loan, in addition to reserving six per cent interest upon such loan, induces the debtor to allow him to occupy, free of rent, a suite of rooms in a hotel conducted by the debtor, the rental value of which is $5,000 a year, and to allow him to receive the proceeds from such suite of rooms when not occupied by him, the transaction is usurious and void.

An attorney at law, authorized to appear on behalf of a tenant in a summary proceeding instituted in a District Court of the city of New York by the land-

---

* These cases were decided at the February term of the Appellate Division (See 102 App. Div. 615), but by direction of the court the opinion has been withheld from publication until the present time.

lord against the tenant to recover possession of the demised premises for non-payment of rent, has authority to request another attorney to appear for him in the proceeding, and an appearance pursuant to such request by the other attorney is conclusive upon the tenant.

Where the petition in the summary proceeding, the precept issued thereon and the proof of service of the precept are in all respects regular upon their face and in accordance with the requirements of the Code of Civil Procedure, the tenant cannot, in an independent collateral action, question the jurisdiction of the said District Court to issue, upon his default (occurring after the denial of an application for an adjournment made by an attorney at law at the instance of the attorney whom the tenant had instructed to appear for him in the proceeding), a final order awarding possession of the premises to the landlord, notwithstanding that it appears in such independent collateral action that, as a matter of fact, the demand for the payment of the rent, which was a condition precedent to the institution of the summary proceeding, was never made upon the tenant; that no rent was due from the tenant at the time the proceeding was instituted, and that the precept was not served upon the tenant or upon the person mentioned in the proof of service.

When the jurisdiction of a court of limited authority depends upon a fact which must be ascertained by that court, and such fact appears and is stated in the record of its proceedings, a party to such proceedings who did not appear therein, although he had opportunity to do so, or who did appear therein, but neglected to controvert the jurisdictional fact, cannot afterwards in a collateral action against his adversary in those proceedings impeach the record and show the jurisdictional fact therein stated to be untrue.

The presumption is against misconduct in business relations. Fraud must be established affirmatively, and if the acts attacked are consistent with an honest intent, fraud is not established.

What evidence is insufficient to establish that a party to a litigation procured a favorable adjudication therein by an actual and affirmative fraud, considered.

The fact that the negligence of the attorney representing a party to an action has resulted in an unjust judgment against such party does not, where it is not claimed that there was any collusion between the attorney and the other party to the action, entitle the first-mentioned party to maintain an independent collateral action against his adversary to have the unjust judgment set aside.

*Semble,* that the negligence of the attorney might justify the granting of relief to the injured party if he had sought to obtain such relief through the medium of a motion made in the action in which the unjust judgment was rendered against him instead of by an independent action.

The fact that a judgment is unjust is not sufficient to warrant the vacation thereof in the absence of fraud or misconduct upon the part of the person profiting by the judgment.

While a court of equity has jurisdiction to set aside, upon a collateral attack, a judgment obtained by fraudulent practices, this jurisdiction will not be lightly exercised. It will, however, be exercised where there is fraud, not in the subject of the litigation, nor in anything which was involved in the issues tried,

but fraud practiced upon a party or upon the court during the trial or in prosecuting the action, or in obtaining the judgment.

In order to render the attack successful, the proof should be clear and very satisfactory. It is not sufficient merely to raise a suspicion or to show what is sometimes called constructive fraud, but there must be actual fraud. There must be by one party a false and fraudulent representation, or a fraudulent affirmative act, or a fraudulent concealment of a fact for the purpose of obtaining an undue and an unjust advantage of the other party and procuring an unjust and unconscionable judgment.

O'BRIEN, J., dissented.

APPEAL by the plaintiff, Lorenz Reich, in the first of the above-entitled consolidated actions, and by the defendants, Eva S. Cochran and others, as executors and trustees, etc., of William F. Cochran, deceased, in the second action, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 7th day of April, 1904, upon the decision of the court rendered after a trial at the New York Special Term, the appeal by the defendants being from the whole of said interlocutory judgment, and the appeal by the plaintiff being from that part thereof which imposes terms for the granting of certain relief and provides for an accounting.

*Alton B. Parker*, for the plaintiff.

*Samuel Untermyer*, for the defendants.

HATCH, J. :

This action was commenced by the service of a summons and complaint on the 18th day of January, 1899. A second action was brought on or about the 22d day of March, 1901, and on the twelfth day of June of that year the two actions were consolidated. In both of these actions Lorenz Reich was and still is the plaintiff. William F. Cochran was the defendant therein until the 27th day of December, 1901, when he died intestate, and thereafter his executors were substituted as defendants herein. Both actions were brought to set aside certain leases, agreements, bonds and mortgages, orders and judgments entered in favor of the defendant Cochran and against the plaintiff. The plaintiff claims that by reason thereof he has been deprived of title to the leasehold premises described in the complaint. The judgment in this action has

vacated and set aside certain agreements made between the original parties to the action and through which William F. Cochran came into possession of the premises known as the Cambridge Hotel, on the southwest corner of Fifth avenue and Thirty-third street, in the city of New York. It further provided that the plaintiff should be restored to the possession of the said premises. It also vacated and set aside numerous judgments and orders obtained by Cochran against the plaintiff and restrains the defendants from availing themselves of certain other judgments in Cochran's favor. The judgment also provides that an accounting be had between the parties, and that the plaintiff within six months after the entry of final judgment pay to the defendants any balance that may be found due from the plaintiff upon such accounting. The defendants have appealed from the whole of the interlocutory judgment and the plaintiff from so much thereof as imposed terms and provided for the accounting. The numerous agreements which were made between the original parties to this action, the relations established thereby and the various forms which the litigation has assumed, arising out of such agreements and relations, have complicated the facts and accumulated a record in this action of formidable proportions. We do not find it necessary to state at this time in chronological order the events which have happened from the inception of the engagement between the original parties to the present interlocutory judgment. We shall content ourselves by a statement of such facts as are essential to the development of the reasons which control our judgment in logical order of discussion.

We have no hesitancy in announcing that the agreement between the parties resulting in the loan of $130,000 by Cochran to Reich constituted usury, and was, therefore, void. The undisputed facts in that connection show that when Reich applied to Cochran to increase the loan of $100,000 to $130,000 Cochran first flattered Reich upon the bargain which he had secured in obtaining the leasehold interest and the large amount of money which he could make therefrom. Having produced a proper frame of mind in Reich as to the large value of his lease, and regarding his absolute necessity of procuring a loan in order to make it available, he suggested to him that in addition to the six per cent reserved upon the loan he

FIRST DEPARTMENT, JUNE, 1905.              [Vol. 105.

should also give to Cochran a certain suite of rooms in the hotel,. the rental value of which was $5,000 a year, free of rent, during the existence of their relations in connection with the lease.   This was. assented to by Reich, the agreement was carried out, and Cochran,. after the construction of the hotel, occupied the suite of rooms free of rent, and when not in such occupation received the proceeds. therefrom during the whole period of time that Reich occupied the: hotel.   We agree with the learned court below that this transaction was usurious and void.   We also agree that the evidence justified the court below in finding that the subsequent proceedings had between these parties, even though manifested by formal articles of' copartnership, were used and intended to be used as mere covers for the exaction of usurious rates of interest.   Every agreement entered into between the parties, however ostensible the statement of relationship, whether as partner or otherwise, secured from. Reich interest upon all moneys advanced, including the $25,000 contributed by Cochran to the special partnership, and the same was: augmented by bonuses and commissions paid either to Cochran or his relatives or to his attorney.   It is not needful that we further advert to the facts in this connection..  The learned court below has. made a lucid and painstaking statement of these transactions in the findings which it made and in the opinion which it delivered.   (See· *Reich* v. *Cochran,* 41 Misc. Rep. 621.)   We have no hesitation in asserting that the evidence is abundant to justify the conclusion· reached by the court that the transaction was usurious in its character, and, therefore, void.

Reaching this conclusion, we are called upon to consider the effect. of the orders, judgments and other proceedings which resulted ultimately in the dispossession of Reich from the leasehold premises. Through an innumerable number of agreements and exactions Cochran had become possessed of title by assignment from Reich to: the leasehold estate, and also by bill of sale had become the owner of the furniture and fixtures in the hotel.   On the 1st day of February,. 1888, he made what purported to be a lease of the leasehold premises and of the furniture and fixtures in the hotel to Reich, and on the same: date executed an agreement whereby upon certain terms therein specified Reich was to be permitted to repurchase the premises.   Upon the: face of these instruments the relation established between Cochran

and Reich was that of landlord and tenant. On the 19th day of September, 1891, Cochran claimed that Reich was in default in the payment of taxes secured to be paid by the lease, and on that day he commenced summary proceedings in a District Court of the city of New York for the purpose of obtaining possession of the premises based upon such default. The taxes were subsequently paid and the proceeding discontinued. Thereafter Cochran brought a suit against Reich in the Supreme Court in Westchester county upon a note given by Reich to secure payment of rent due under the lease. In that action Reich interposed an answer setting up as a defense that the lease was part of a transaction which rendered it a mortgage and that the same was usurious and void. This suit was never tried. On November 5, 1891, an action was commenced by Reich against Cochran in the Supreme Court, New York county, wherein he demanded judgment that two certain mortgages executed by Reich to Cochran be declared usurious and void ; that the Cochran lease to him be declared a mortgage, and that Cochran be restrained from taking summary or other proceedings to obtain possession of the leasehold premises. On November 7, 1891, a motion was made in that action to obtain an injunction restraining Cochran from instituting summary proceedings for non-payment of rent. The motion came on to be heard before Mr. Justice LAWRENCE in the Supreme Court. The transactions between the parties were referred to upon that motion, but were not made a part of the papers. Thereupon the court requested that the agreement setting forth the facts concerning the rate of interest which had been exacted and the recompense which Cochran had received for his interest in the premises be submitted to it. The attorney for Reich undertook to produce such papers, but neglected to so produce them, and the motion was subsequently denied. On the 26th day of December, 1891, and in May, 1892, respectively, separate proceedings were instituted by Cochran in a District Court of New York city to dispossess Reich for non-payment of rent. In each case, upon the return of the precept Reich paid the rent under protest, claiming that the sums reserved were usurious exactions. In each of these cases, as well as in the summary proceedings instituted for the non-payment of taxes, at the conclusion thereof Cochran set up by way of supplemental answer the institution of the

proceedings and that thereunder the rent had been paid. On the 9th day of August, 1892, the rent secured by the lease not having been paid on the first of August, Cochran presented a petition dated that day to a District Court of the city of New York praying for the removal of Reich from the leasehold premises because of non-payment of rent alleged to be due under the lease. Upon this petition the court issued a precept under date of August 12, 1892, returnable upon the seventeenth of August thereafter at nine o'clock in the forenoon, requiring Reich to move from the leasehold premises or show cause why possession thereof should not be delivered to Cochran. Upon the return day of the precept the attorney for Reich appeared at the District Court room where the precept was made returnable before the court convened. He did not wait for the judge to arrive, but left the court room, and as he was passing out he requested one Hewitt, a lawyer, but a stranger to the attorney and whom he had never met, when the case was called on the calendar, to ask for an adjournment. Hewitt remained, and when the case was called applied for an adjournment, which was objected to by Cochran and thereupon the court refused to grant the same and directed that a final order issue in the proceedings in favor of Cochran, but directed that a stay of proceedings should be had until the next day. Reich at this time was out of town and had been from July 31, 1892. Upon the evening of August seventeenth he received a telegram from his attorney requesting his immediate return to the city. He complied with this request, but could not find his attorney until the next day, when he was informed that he would have to pay Cochran the rent then claimed to be due, amounting to the sum of $13,289, which he paid, as before, under protest. The attorney did not inform Reich that a final order had been issued in the summary proceedings and the latter had no knowledge of such fact. Upon the 10th day of November, 1892, Cochran filed a supplemental answer in the action of *Reich* v. *Cochran*, wherein as a separate defense he set up the history of the last summary proceeding, alleged that the demand for rent and the precept issued upon the petition therein were made and served personally upon Reich in New York city; that the latter was represented in court by his attorney; that a final order was issued in the summary proceedings, which directed judgment in favor of Cochran

and judgment was thereupon so rendered that Cochran have possession of the premises and that a warrant issue to remove Reich and to put Cochran in full possession of the hotel; that a stay was granted until the following day, at which time Reich paid said judgment and Cochran accepted it in payment of rent due and in satisfaction thereof. No appeal was taken from the judgment or order in the summary proceedings at that time. In November, 1892, Cochran commenced another summary proceeding for the purpose of collecting rent under the lease, and in answer thereto the attorney for Reich set up as a defense that the Cochran lease was a part of a transaction constituting a mortgage and that the same was usurious and void. After one adjournment Cochran discontinued the proceeding and no trial was ever had. On the 6th day of February, 1893, the trial of the case of *Reich* v. *Cochran* was commenced before Mr. Justice Ingraham sitting at Special Term. Before any testimony was taken question was raised as to the effect of the final order obtained upon the 17th day of August, 1892, in the summary proceedings set up as a defense in the answer, it being then claimed that such determination constituted a valid, binding adjudication; that the Cochran lease was valid and that the conventional relation of landlord and tenant existed between Cochran and Reich. Upon motion to dismiss the complaint upon this ground the parties made the following stipulation in open court: "For the purposes of this motion it is conceded that, in August last, a proceeding was instituted in the Sixth Judicial District Court in the City of New York, whereby this defendant sought to dispossess the plaintiff, on the ground that there was a certain amount of rent due under the lease that is set up in the complaint, and that such proceedings were had on the 17th of August, 1892, [that] a judgment was entered in favor of the petitioner that said petitioner have possession of the premises therein described by reason of the non-payment of the tenant's rent, and that a warrant issue to remove the said tenant and all persons from the said premises, and to put the petitioner in full possession thereof; that subsequently this plaintiff paid the amount stated in the petition as claimed to be due for rent." The Court of Appeals, in passing upon the effect of this stipulation, said: "We think when properly construed this stipulation must be regarded as an admission that a proper and valid judg-

ment was entered in favor of the petitioner.   Under the circumstances, we are of the opinion that the plaintiff is not in a position to raise any question as to the regularity or validity of that judgment."   (*Reich* v. *Cochran*, 151 N. Y. 122.)   Upon this stipulation and the proceedings the Supreme Court determined that the judgment or order of the District Court of the city of New York was *res adjudicata* as to the relation of landlord and tenant and the validity of the lease, and thereupon dismissed the complaint.   Thereafter the attorneys for Reich made a motion in the District Court to have the default taken on the 17th day of August, 1892, reopened for the purpose of allowing Reich to have a trial upon the merits. The motion was denied by the District Court upon the sole ground that the court was without jurisdiction to grant the motion.   This decision was made on or about the 21st day of March, 1893.   On the same date the attorneys for Reich appealed from such order to the Court of Common Pleas for the city and county of New York. No return by the court was filed thereto until March 12, 1896, when a return was made to the Appellate Term of the Supreme Court, and the appeal was not brought on for argument until June, 1897.   In that year the final order was affirmed and the appeal from the order denying the motion to open the default was dismissed, both the final order and the order denying the motion having been brought up by the appeal.   The ground of the court's judgment, as expressed in its opinion, was that the proceedings resulting in the final order were regular upon their face; that it was not made to appear that Hewitt's appearance was not authorized, and that while the marshal's return of service to the precept was attacked, yet that such attack was fully met by affidavits produced by the landlord.   The appeal from the order refusing to open the default was dismissed for want of power in the District Court to grant the motion.   (*Cochran* v. *Reich*, 20 Misc. Rep. 593.)   On March 8, 1893, Reich, acting under the advice of his attorney, appealed to the General Term of the Supreme Court from the judgment entered in the action of *Reich* v. *Cochran*, and on such appeal the judgment was affirmed.   (*Reich* v. *Cochran*, 74 Hun, 551.)   From this judgment an appeal was taken to the Court of Appeals.   Thereunder the attorney for Reich sought to attack the final order made by the District Court on the 17th day of August, 1892, as invalid.   The Court

of Appeals affirmed the judgment and held that the latter question not having been raised in the court below would not be considered for the first time on appeal. (*Reich* v. *Cochran*, 151 N. Y. 122.) On March 10, 1893, the attorney for Reich procured an order in the action of *Reich* v. *Cochran* directing the latter to show cause upon March 15, 1893, why the judgment that was had in that case should not be opened and Reich be permitted to attack the final order of the District Court made on the 17th of August, 1892. It was set out in the motion papers accompanying the order that no process in the summary proceedings had been served upon Reich under which the final order was granted. This motion was not argued under the order to show cause until after other final orders were procured in summary proceedings brought by Cochran against Reich in a District Court. On or about June 30, 1893, Mr. Justice INGRAHAM denied a motion to open the judgment in the case of *Reich* v. *Cochran* heard upon the return of the order to show cause. Nothing was made to appear upon this motion showing an excuse for not making an objection to the record of the District Court when the same was being considered by the justice and no attempt was made to show that the District Court was without jurisdiction, nor was any attempt made to make it appear at that time that Reich was not in the city of New York when the proceedings, wherein the first final order was granted, were instituted. In March, 1893, Reich's attorney prepared a summons and complaint in a new action to be brought by Reich against Cochran, also moving affidavits and an order to show cause, and prepared to make a motion under such order to set aside and enjoin the institution of all summary proceedings pending the action to be brought for the purpose of reopening the judgment obtained in *Reich* v. *Cochran*. The complaint therein set out a full history of all the proceedings leading up to the first final order of dispossession ; that Reich was not served with any demand for the payment of rent and that he was absent from the city during the whole period. These papers, although prepared, were never served and no action was begun. In February and March, 1893, Cochran commenced two separate summary proceedings against Reich in a District Court for the recovery of the leasehold premises. Precepts were issued and on the return day thereof, at the request of Reich, his attorney filed answers in each, setting

up that the Cochran lease was executed as security for a loan and that the same was usurious and void. The issues thus joined were tried in each proceeding. The Supreme Court judgment rendered in *Reich* v. *Cochran* was introduced in evidence and such judgment was held to be *res adjudicata* and final orders were entered in the two District Court proceedings, awarding possession of the premises to Reich and upon the 17th day of March, 1893, Reich was dispossessed and Cochran was put in possession of the Cambridge Hotel property. Thereafter appeals were taken from these final orders to the Court of Common Pleas for the city and county of New York, which were transferred to the Appellate Term of the Supreme Court, but they were not brought on for argument until June, 1897, when the orders were affirmed by an order of the Appellate Term, entered on the 29th day of September, 1897. (*Cochran* v. *Reich*, 20 Misc. Rep. 623.) Cochran also brought two actions against Reich and his wife upon promissory notes, given by them for the payment of rent reserved under the term of the Cochran lease, and Reich, through his attorney, put in an answer and set up as a' defense that they were given as a part of the usurious transaction above referred to. These actions were referred and the referee before whom they were tried held that the judgment in the action of *Reich* v. *Cochran* was *res adjudicata* upon that issue and that they were not usurious. On the 23d day of May, 1893, Cochran commenced an action against Reich to recover rent alleged to be due upon the Cochran lease upon the 1st day of November, 1892, and the 1st day of February, 1893, and also for certain rates, taxes and charges alleged to be payable under the lease. . Reich appeared in this action and set up by answer the same defense of usury as he had interposed in the other actions. When the case came on for trial, the attorney for Reich failed to notify him that the case was to be tried and he had no representative in court at that time, the attorney also failing to appear. The plaintiff waived a jury and took an inquest, resulting in a decision against Reich for the recovery of $49,255.16, for which, together with costs and an extra allowance, a judgment was entered on the 25th day of March, 1897, for $51,936.03.

The foregoing is a skeleton statement of the various litigations and proceedings had between these parties. It is apparent therefrom that the judgment, final orders and nearly all the other determi-

nations which have been had and which has resulted in excluding Reich from the enjoyment of the leasehold premises and have defeated his rights in securing legal redress, are all made to rest upon the summary proceeding instituted in the District Court in August, 1892, resulting in a final order awarding the possession of the premises to Cochran on the seventeenth day of that month. Such final order has been construed as a binding adjudication as to the validity of the lease and, therefore, further inquiry into such issue was foreclosed. Every tribunal, from the trial court to the Court of Appeals, has formally established the binding force of that adjudication. Unless the plaintiff, therefore, has successfully assailed and overthrown it in this action, its binding force must still prevail. The trial court has found upon this subject that the District Court was imposed upon and deceived by the recitals in the petition presented by Cochran and the affidavit of Bagg that a demand for rent was made "and was, by reason thereof, led into granting a precept without jurisdiction to issue the same. The said District Court was deceived and misled in granting the Final Order or Judgment of August Seventeenth (17th), 1892; and the said Cochran thereby fraudulently took and obtained an unfair and undue advantage over Reich." As we construe this finding it presents a mixed question of law and fact. The finding that the District Court was without jurisdiction to issue the precept is a conclusion of law. The finding that Cochran was guilty of fraud is a finding of fact. We are, therefore, to examine whether this finding can be sustained either as matter of law or of fact. It is not claimed that the petition presented to the District Court, and upon which the proceeding was instituted, is in any respect defective as matter of law. It was in every substantial respect in conformity with the provisions of section 2235 of the Code of Civil Procedure; it stated all the essential jurisdictional facts and authorized the court to issue the precept which it did. (*Matter of Baker*, 173 N. Y. 249; *Cochran* v. *Reich*, 20 Misc. Rep. 593.) The precept issued upon the petition was in all respects regular and complied with the provisions of section 2238 of the Code of Civil Procedure. The proof of service of the precept was made by the certificate of the marshal. The certificate recites that Reich, the tenant, was then absent from the premises and that he served the same by delivering a copy

thereof to Frederick Walmsley, a person in charge thereof, of suitable age and discretion, and who at the time of the service resided there; that he exhibited to such person the original precept and that the copy served had indorsed thereon the provisions of section 2241 of the Code of Civil Procedure; that he was unable, after due and diligent search, to find the tenant upon the premises.

This service was authorized by subdivision 2 of section 2240 of the Code of Civil Procedure and the proof of service is, in all respects, sufficient. (Code Civ. Proc. § 2243; *Matter of Rathburn,* 10 N. Y. St. Repr. 268.) The petition having been sufficient upon its face to confer jurisdiction upon the magistrate to issue the precept, and the precept having been issued and properly served, it follows that the court acquired jurisdiction of the proceeding and of the person against whom the precept was issued.

The plaintiff claims, however, that a demand for the payment of the rent which was a condition precedent to instituting the proceedings was never, in fact, made upon Reich. It may be so conceded and also conceded that the precept, in fact, was not served upon Walmsley or upon Reich; that the rent was not due at the time when the proceeding was instituted as Reich had ten days in which to pay it after the first of the month, which time had not elapsed. It may be conceded that all of these objections existed as matter of fact. Assuming that they did, it in nowise affected the jurisdiction of the court. That remained as ample and complete as though each defect were without existence. The rule by which the jurisdiction of an inferior court is to be tested does not depend upon such questions. In *Dyckman* v. *Mayor, etc., of New York* (5 N. Y. 434) the rule is stated in these words: "When the jurisdiction of a court of limited authority depends on a fact, which must be ascertained by that court, and such fact appears and is stated in the record of its proceedings, a party to such proceedings who had an opportunity to controvert the jurisdictional fact but did not, and contested upon the merits, cannot afterwards, in a collateral action against his adversary in those proceedings, impeach the record and shew the jurisdictional fact therein stated to be untrue." And it might have been added that if the party did not appear in such case, but had opportunity to so appear and contest the fact and did not, the determination of the court would still be valid. The rule

announced in the case cited has been confirmed by judicial expression and decisions since its announcement. (*Roderigas* v. *East River Savings Inst.*, 63 N. Y. 460; *Bolton* v. *Schriever*, 135 id. 65; *Matter of Patterson*, 146 id. 327.) In the *Roderigas Case* (*supra*) such rule was applied in a case where there was an affirmative allegation in a petition for letters of administration that the person was dead, when, in fact, he was alive, and yet the court held that such fact did not defeat the jurisdiction of the court to act upon the petition. Each of the specific matters relied upon to defeat jurisdiction appeared before the court in some form, and upon each of such questions the court was required to ascertain the fact, and as each appeared and was stated in the record of the proceedings, it became conclusive upon jurisdiction the moment they were determined by the court to exist. The facts as to whether a demand for the rent had been made or that any was due when the proceeding was instituted was matter of defense and presented issuable facts. If contested and found against the contestant, or if uncontested and so found, the determination in each case was equally within the jurisdiction of the court, and the final order pronounced thereon became as valid during its existence as though the jurisdiction were admitted. It is evident, therefore, that the finding of the trial court that the District Court was without jurisdiction has no basis upon which it can rest. It might as well be said that the court was without jurisdiction in an action against an indorser of a promissory note, wherein it was averred that it was due, had been presented for payment, dishonored and the indorser properly charged, and after judgment upon default, after proof of these facts, it was open to attack because, forsooth, the indorser denied that notice of the dishonor had been given to him. (See *O'Donoghue* v. *Boies*, 159 N. Y. 87; *Porter* v. *Purdy*, 29 id. 106.)

Reaching the conclusion that the District Court was possessed of jurisdiction, was the judgment obtained by the fraud of Cochran? The court below did not make a direct finding of fraud. Its language is that by reason of the facts to which we have already adverted, "Cochran thereby fraudulently took and obtained an unfair and undue advantage over Reich." This falls short of a finding that in the procurement of the final order Cochran perpetrated an actual and affirmative fraud in obtaining it. In construc-

FIRST DEPARTMENT, JUNE, 1905.                [Vol. 105.

tion the finding is that having obtained the final order which may
have been without fraud he took and obtained thereby an unfair
advantage.   It is elementary that the presumption is against mis-
conduct in business relations; that fraud must be established affirma-
tively and if the acts attacked are consistent with an honest intent,
fraud is not established. (*Shultz* v. *Hoagland*, 85 N. Y. 464.)
The facts relied upon to establish the fraud in this connection are
the claimed false affidavit of Bagg that he served the demand upon
Reich for the payment of the rent and that Cochran acted thereon
by setting up the same in his petition and thus by a false affidavit
established the necessary fact, and further that he knew at the time
when the proceeding was instituted that the rent was not due.
There is no proof to show that Bagg in fact knew that his affidavit
was false.   It is not claimed that he did not serve upon somebody,
whom he supposed was Reich, and there is not the slightest evi-
dence to show that Cochran had any knowledge whatever that the
affidavit made by Bagg was not true in fact.   If Bagg served the
notice upon the person whom he supposed to be Reich and made
the affidavit in the honest belief that he had served him, there
could not be the slightest ground upon which to predicate fraud,
and the same is true of the acceptance by Cochran of Bagg's state-
ment, which was incorporated in the petition.   By the terms of the
lease the rent reserved was payable on the first of August, although
Reich had ten days of grace in which to pay after the same fell
due.   He could not, therefore, be proceeded against prior to the
expiration of the ten days, but such fact did not destroy the date
upon which the rent became payable, which was the first of the
month.   The petition was made upon the ninth of August, one day
before the days of grace had expired, but the precept was not issued
until the twelfth day of August, two days after the day of grace
had expired, and it was made returnable on the seventeenth, so that
at the time when the petition was presented to the court the rent
had become due and payable, and at the time when the petition was
acted upon there was no barrier in the way, nor anything which
militated against its statement of fact, save proof of a demand.
Under these circumstances it would be going a long way to hold
that these facts were sufficient upon which to base an affirmative
finding of fraud upon Cochran's part.   No case of which we are

aware sustains such a conclusion and none has been called to our attention holding such doctrine. We think it must follow, therefore, that the plaintiff failed to establish the right to have this final order vacated and set aside, either for want of jurisdiction in the court to grant it or for fraud in the proceedings by which it was obtained.

Reaching this conclusion, the case of the plaintiff comes to rest upon his right to relief, based solely upon the negligence of his attorney in the conduct not only of the District Court proceeding, but of all the proceedings had and taken. It is not claimed that there was any collusion between Cochran, or his attorney, or of any person acting in his behalf, and Reich's attorney. On the contrary, it affirmatively appears that however negligent the latter may have been, or misguided as to his views of the law or otherwise, he from time to time presented the case of Reich with ability and skill and raised in connection with this final order very serious legal questions, which every court treated seriously and elaborately in their disposition. After the action of *Reich* v. *Cochran* was commenced, every proceeding, beginning with the first summary proceeding to dispossess Reich for non-payment of taxes down to the one in which the final order was entered, Cochran's attorney immediately availed himself of by setting them up in supplemental answers. So that from beginning to end the parties were constantly advised of the claims made as to the force and effect which Cochran claimed arose from the several proceedings. The stipulation which was made in the action before Mr. Justice INGRAHAM, it is stated, constituted gross neglect. It is not claimed that it was in any sense collusive. Evidently the making of that stipulation foreclosed the plaintiff's obtaining any relief in that action. It was not a stipulation, however, which was negligently made, for the reason that had none been made and had the defendant been remitted to proof of the final order and the proceedings which led up to it, it would have shown precisely the same facts which were embraced within it. The most, therefore, that can be said of this is that it was a mistake of law if anything. That the attorney was guilty of negligence in other matters, and that such negligence operated to defeat the right of Reich to any relief, is apparent from the evidence and found by the trial court, although the court felt called

upon, as we do, to acquit the attorney from any intentional wrong-doing therein. It is not necessary that we call attention in detail to every specific act of negligence which appears in the record. We reach the conclusion upon such subject that the finding of the court that there was negligence is supported by the testimony, and we also think that in its effect it operated in preventing Reich from enforc-ing his legal rights. Having reached this conclusion, the question with which we are confronted is can the plaintiff have the relief for which he has asked and which in part has been granted by the judg-ment below, based solely upon the negligence of his attorney? It affirmatively appears that such negligence was not the product of any collusion with Cochran or of any person representing him. The litigation between these parties began on or about the 19th day of September, 1891, when the first summary proceeding was instituted by Cochran against Reich. It has continued from that time without cessation down to the present. In August of the following year the final order establishing the validity of the lease was entered, and from that day to the rendition of the judgment in this action it has stood and been acted upon unimpaired. On the 6th day of Febru-ary, 1893, it was brought to the attention of the court, and a formal adjudication then had that the final order in the summary proceed-ings was *res adjudicata* of the legal rights of Reich. While vari-ous steps were taken by Reich and his attorney to rid himself of the binding force of that final order none were taken in such form as to permit of a consideration upon the merits. With full knowl-edge of this precarious condition Reich litigated the matter through to the Court of Appeals, where final judgment was rendered against him upon the issue thus raised. He has, therefore, had his day in court respecting his legal rights. When he litigated such question through to a final conclusion, in the absence of affirmative fraud upon the part of Cochran, he is precluded from attacking a judg-ment which has settled such rights. The rule governing such an attempt is well stated by Judge EARL in *Ward* v. *Town of South-field* (102 N. Y. 287, 292). Therein the learned judge said : " Courts of equity have general jurisdiction to grant relief against fraud and to set aside all deeds, contracts and other instruments obtained by fraudulent practices ; and the jurisdiction of the court to grant such relief extends not only to voluntary contracts *inter partes,*

but also to judgments and decrees of courts. But the solemn judgment of a court should not be lightly interfered with. It is for the interest of the public, as well as of individuals, that there should be an end of litigation, and where parties have been lawfully brought into a court having jurisdiction of their persons and the subject of litigation, and have had opportunity to prosecute their claims and to defend their rights, and judgment has been regularly pronounced, while such judgment is not vacated or reversed, it concludes the parties thereto ; and a matter thus once litigated and adjudicated cannot be again brought in question. Such are the general rules which should not easily be evaded. A party defeated in a litigation may appeal from the judgment or move for a new trial, and, in a proper case, to vacate and set aside the judgment. These remedies are generally ample to protect all parties. But where there is fraud, not in the subject of the litigation, not in anything which was involved in the issues tried, but fraud practiced upon a party or upon the court during the trial or in prosecuting the action, or in obtaining the judgment, then in a proper case the judgment may be attacked collaterally, and on account thereof set aside and vacated. But before a regular judgment can be thus assailed the proof should be clear and very satisfactory. It is not sufficient merely to raise a suspicion or to show what is sometimes called constructive fraud, but there must be actual fraud. There must be by one party a false and fraudulent representation, or a fraudulent affirmative act, or a fraudulent concealment of a fact for the purpose of obtaining an undue and an unjust advantage of the other party and procuring an unjust and unconscionable judgment." (*Mayor, etc., of N. Y.* v. *Brady,* 115 N. Y. 599 ; *Stilwell* v. *Carpenter,* 59 id. 414.) Injustice is not sufficient to authorize such relief in the absence of fraud or misconduct upon the part of the person profiting by the judgment. (1 Black Judg. §§ 356, 366, 378.) If the negligence of an attorney, his incompetence or his mistake as to the law could be made the basis of interfering with solemn judgments and vested rights long after they have been secured, it is safe to say that no judgment and no adjudication could ever be said to be finally composed. It is the exception that in incessant litigation between parties the rights of either are ever fully and completely protected. Negligence and incompetence, mistakes of law, omissions to object to testimony, neglect to make

a proper motion or take an exception may each and all operate to defeat a party's right and work injustice. Neither courts nor lawyers are infallible, nor do they at all times hew to the line of full and complete performance of duty. And if it be settled that the failure to discharge obligations assumed may be made the basis for overturning judgments and opening decrees instead of composing litigation, it will swell its flood. While I am satisfied that injustice has been worked in this particular case through the omission of the attorney to properly protect his client's interests, yet I am unable to find any power reserved in the court to grant him relief based upon that ground.

The cases relied upon by the respondent in support of the judgment in the main arose either in an action wherein there existed affirmative fraud or where the application for relief was made in the action itself. As to the former of these cases the argument proceeds upon the theory that the 63d finding of fact, to which we have already adverted, was a finding of fraud. If that were true, and the evidence supported it, we should have no hesitancy in agreeing with the learned counsel for Reich that he was entitled to relief. These cases as authority at once fall to the ground when it appears that the finding is not one of fraud, nor is the evidence sufficient to support such a finding, had one been made. No case is called to our attention where the equitable rule has authorized a court of equity to grant the relief upon a collateral attack under such circumstances. The rule is otherwise where the motion is made directly in the action itself. Under such circumstances the negligence, ignorance or fraud of an attorney may be taken advantage of in a proper case. (*Sharp* v. *Mayor, etc., of New York,* 31 Barb. 578; *Gideon* v. *Dwyer,* 17 Misc. Rep. 233; affd., 7 App. Div. 608; *Vilas* v. *P. & M. R. R. Co.,* 123 N. Y. 440.) But the rule which might apply in such a case has no application to the present. In the discussion thus far we have purposely omitted any reference to the effect of the appearance by Hewitt upon the return day of the precept in the summary proceedings. Defendant's attorney was authorized to appear and, being so authorized, we think that he had authority to request an appearance by another attorney for him, and while undoubtedly the attorney ought to have attended to the matter himself, yet as he could request such appearance and did, it was

authorized, and, so far as it had effect upon the proceeding, concluded Reich. In no view, therefore, of this case can we find support for this judgment. So far as the appeal of the plaintiff is concerned, as the success of the appellant therein depends upon the validity of the judgment which has been rendered, it necessarily falls with the conclusion which we have reached. That appeal should, therefore, be dismissed, with costs.

If these views be sound, it follows that on the defendants' appeal the judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., INGRAHAM and McLAUGHLIN, JJ., concurred; O'BRIEN, J., dissented.

On the plaintiff's appeal, appeal dismissed,* with costs. On the defendants' appeal judgment reversed, new trial ordered, costs to appellants to abide event.

---

* Decision changed by HATCH, J., from "judgment affirmed" to "appeal dismissed."