Joseph F. Farlo, J.
The within matter comes before this court on respondent’s (tenant’s) application by order to show cause, requesting an order (a) staying execution of the warrant of eviction (which had already been executed); (b) vacating a consent judgment entered previously.
*64 Although the court never conducted a formal hearing, it has the benefit of two in-depth chamber conferences, with all parties present (Sept. 20, 1976 and Nov. 5, 1976), a very extensive file numbering close to 50 pages of documents, affidavits and memorandum of law, and in any event, the respondent admits the court has sufficient information to make its determinations.
A marshaling of the essential facts reveals the following: The respondent is a tenant on the ground floor and basement of premises 118-24 Queens Boulevard, Kew Gardens, by virtue of a certain lease dated January 11, 1971, which tenancy applied to occupancy of the premises as a restaurant and expires April 30, 1986. The lease was executed by Spiros Pappas, residing in Rosedale, L. I., and contained a provision allowing an assignment to a corporation. On February 10, 1971 the lease was assigned to Sutphin Food Shop, Inc., with offices at 118-24 Queens Blvd., Kew Gardens.
The lease sets forth a basic rental of $1,500 per month, plus apportioned items such as tax increases, gas and water charges, consumer price index increases, and several incidental other items. The history of this tenancy has obviously been a stormy one, primarily due to tenant’s constant arrears in payment of its obligations. This is confirmed by the multitude of summary proceedings instituted against this tenant. As a further example of his arrears, the parties on April 24, 1975, entered into a supplement agreement to the lease in which the tenant agreed to pay the sum of $2,000 a month from May 1, 1975 to April 30, 1977 to "catch up” with its past and present obligations, in addition to $750 a month for four months, commencing with June 1, 1975 to "catch up” with its obligation for the 1973-1974 taxes, and further amending paragraph 47 of the lease which required the payment of $25 for legal fee for each nonpayment proceeding to $150 every time an attorney was retained for a nonpayment proceeding, plus an extra $100 if the attorney was obligated to go to court.
The within proceedings were instituted by notice and petition for nonpayment of rent on August 12, 1976, alleging rent due in the sum of $10,251.29 for the months of June, July and August, 1976, plus a balance for May, and included items of water and gas for periods in 1976 and attorney fees from 1973 to 1976 in the sum of $2,153.37. Tenant defaulted, but before the warrant was issued, by order to show cause, the *65 default was vacated on September 15, 1976, and the matter set for trial on September 20, 1976.
During the interim, and on September 9, 1976, the restaurant premises were completely destroyed by a fire and had to be closed.
During the conference of September 20, 1976 the tenant’s allegations of owing less money were obviously spurious, which was the basis of his obtaining the order to show cause; nevertheless, because the sum demanded in the petition included legal fees of $2,153.37 for periods before the April 24, 1975 agreement, and in sympathy with tenant’s fire situation and lost income, the court, in the interest of justice, suggested a compromise, to wit: a consent judgment in the sum of $9,851.29, which would include rent to September 9, 1976, the date of the fire, which sum was to be paid $5,000 on or before October 1, 1976 and the balance of $4,851.29 on or before October 12,1976.
The subject restaurant premises are located on the ground floor of a 60-family apartment house. During the period following the fire of September 9, the landlord received numerous complaints, both from its tenants above and the neighboring taxpayer occupants referrable to obnoxious odors from decaying and burned food, charred wood and equipment and the first presence of vermin, rodents and flies. Although the tenant was on the premises on numerous occasions, the court concludes from the information available that he did nothing to alleviate these conditions, and, accordingly, on September 29, 1976, the landlord, using a key furnished him by the tenant, entered the premises, removed some of the burned and decaying food, charred debris, and caused the premises to be fumigated.
On October 1, 1976 the tenant defaulted in his $5,000 payment; on October 5, 1976 the landlord requested the issuance of a warrant; on October 21, 1976 the warrant was issued and served (the delay caused by the death of a marshal), and now beyond the second installment date ($4,851.29 to be paid October 12). On October 28, 1976 the warrant having been fully executed, Marshal McNulty delivered "Legal Possession” of the premises to the landlord at 9:00 a.m. The within order to show cause was served upon the marshal at 3:00 p.m.
One additional fact which the court believes relevant. At the conference in chambers November 5, 1976, the court asked respondent if he could that moment pay the landlord the *66 $9,851.29 due, and he answered, "No, but I can raise it by next week.”
The above fact pattern raises some very interesting questions, but especially the Civil Court’s authority to help the respondent tenant, and its authority to act once a warrant has been executed. Before reviewing the question, let us examine some of the ancillary, yet important questions raised by the parties herein. The first argument is that the lease executed January 11, 1971 had Spiros Pappas as the lessee and accordingly, since these proceedings are solely against Sutphin Food Shop, Inc., any judgment rendered is defective by reason of not including a necessary party. This argument falls by reason of an assignment of lease by Spiros Pappas to Sutphin Food Shop, Inc., and the assumption by Sutphin acknowledged February 10, 1971.
Respondent’s next argument is that the lease dated January 11, 1971 requires all notices to be sent to Spiros Pappas at 259-12 149th Road, Rosedale, L. I., N. Y., the tenant’s home address. Paragraph 55 of the lease also contains the following language "or to such addresses as to which notice has been given.” Tenant’s argument concludes that since the warrant was not served in Rosedale, in accordance with sections 749 and 735 of the Real Property Actions and Proceedings Law, the execution of the warrant was defective. But again, the court has before it a copy of the assignment dated February 10, 1971 to Sutphin Food Shop, Inc., which clearly states the address of the corporation as 118-24 Queens Boulevard. In addition, diverse lease modifications dated February 6, 1973 and April 24, 1975, all executed by Sutphin Food Shop, Inc., with principal offices at 118-24 Queens Boulevard; and even more convincing is the fact that the original notice and petition was served at 118-24 Queens Boulevard, on August 12, 1976, and that service has never been contested.
Respondent’s third argument is that landlord’s entry upon the vacant, closed, boarded-up restaurant premises (to alleviate odors and vermin spreading into surrounding premises several days before that first installment of $5,000 was due) constituted an illegal, tortious and fraudulent "seizure of possession” alleviating tenant from his obligation to pay $5,-000 on October 1, $4,851.29 on October 12 or having the $9,851.29 to pay the landlord on November 5, 1976, since he did not consent to the landlord’s entry into the premises on September 29 or thereafter.
*67 Respondent’s arguments fail due to numerous reasons. Paragraph 13 of the lease allows the landlord to "enter the demised premises at all times to examine same * * * and to make * * * repairs * * * improvements * * * as to the landlord may deem necessary or desirable * * * without the same constituting an eviction of tenant in whole or in part and the rent reserved shall in no wise abate while said * * * repairs * * * are being made”. In view of this provision, the landlord had an absolute right to enter the premises to make the necessary repairs. (Koltz v 97 Columbia Hgts. Corp., 6 Misc 2d 840.) Since the landlord had a right, and in fact an obligation, to enter the premises to relieve a condition affecting his 60 tenants and others (see Multiple Dwelling Law, § 78; Weiner v Leroco Realty Corp., 279 NY 127, 130) "the owner does not escape liability by making a lease.” Accordingly, the landlord’s obligation and right to enter the premises on September 29, 1976 cannot in any way relieve or excuse the tenant’s default in making its appropriate payments on October 1 and 12, 1976.
As to landlord’s action being fraudulent, this argument fails if the landlord’s actions are consistent with an honest intent (Reich v Cochran, 105 App Div 542).
Respondent’s next point is its conclusion that had the court been apprised of the landlord’s entry into the premises on September 29, 1976, when the warrant was requested on August 5, 1976, the court would not have issued the warrant. The court cannot agree with that, especially in light of its findings above, as to landlord’s right to enter the premises, but also important is that if concealment existed, the concealment had to be an intentional concealment of a material and controlling fact for the purpose of misleading and taking an undue advantage of the opposing party (Ward v Town of Southfield, 102 NY 287) which the court concludes was not. As to respondent’s argument that the landlord’s entry prejudiced its negotiating with the fire insurance company, that item and several others raised by respondent, and which the court does not feel are relevant to these proceedings, most likely will be the subject of a plenary suit, if the parties are so advised.
We now come to one of the most interesting, if not the most basic problem presented by these proceedings, and that is the power of the Civil Court to stay a warrant of eviction, once executed. There is no precise statutory authority, and a reading of the decided cases leave this court with the impression *68 that my colleagues are either attempting to bait the appellate courts into laying down some specific decisional guidance or because of the extreme equitable consideration are willing to read clarity in muddied waters. This, irrespective of Third City Corp. v Lee (41 AD2d 611), which reached a conclusion without explanation or guidelines for the future cases.
Historically, and prior to the enactment of the CPLR, once the warrant was issued by the then Municipal Court, the court lost power and jurisdiction to relieve a tenánt for any reason (People ex rel. Halperin v Strahl, 113 Misc 23). Except where the final order was obtained on tenant’s default, nevertheless before warrant executed, the tenant’s only relief was either to appeal or injunctive relief to be applied for in the Supreme Court. (See Civ Prac Act, §§ 1446, 1447.)
On the question of when is a matter still pending in the Municipal Court, empowering it to continue its jurisdiction of the subject matter, in the Matter of Tartaglia v McLaughlin (297 NY 419) the court stopped at that period between issuance of final order and issuance of warrant. In Whitmarsh v Farnell (298 NY 336) the court extended the period up to execution of the warrant. This was the situation upon the enactment of the CPLR.
Sections 1446 and 1447 of the Civil Practice Act were omitted in the CPLR, and CPLR 2201 states: "Except where otherwise prescribed by law, the court in which an action is pending [emphasis added] may grant a stay of proceedings in a proper case, upon such terms as may be just.” Using this section, the court in 203 E. 13th St. Corp. v Lechycky (67 Misc 2d 451) concluded that although the warrant had been issued, it was no longer necessary for the tenant to either appeal or obtain injunctive relief, but provided the proceeding was still pending, that is the warrant was not executed. In Gooden v Galashaw (42 Misc 2d 8) the court met the problem squarely in the negative. By the rationale of Whitmarsh v Farnell, the matter was no longer pending. Since the Gooden v Galashaw case, the Civil Courts have utilized two additional sections in reaching for its conclusions, section 212 of the New York City Civil Court Act which grants the Civil Court equal powers with the Supreme Court, under proper circumstances (within its jurisdictional limitations) and CPLR 5015 which outlines the equity powers of the court.
In Matter of Marluted Realty Corp. v Decker (46 Misc 2d 736) utilizing its powers as it interpreted them by virtue of *69 section 212, it concluded that it had the power to set aside a warrant even after it was executed. The court hesitated on the question of whether it had the power to reinstate the tenant wrongfully evicted.
In Matter of Joseph v Cheeseboro (42 Misc 2d 917) and Papp v Maffei (64 Misc 2d 739) both combined the authority of section 212 of the New York City Civil Court with CPLR 5015. In the Cheeseboro case, it set aside a warrant issued but not executed and in Maffei it set aside its warrant even after execution. But the point this court is trying to make is that a careful reading of these cases leaves it with the impression that in the above cases the courts were reaching out for legislative or appellate court guidance while trying to alleviate some very unconscionable situations. In the Cheeseboro case the court was dealing with a 20-year tenancy. In the Maffei case the court was dealing with a 73-year-old tenant who had occupied the apartment for 28 years. In the Albany case the landlord received the rent but neglected to so inform the court. In the Maffei case, the court was aware of the Gooden v Galashaw case, but said its case could be distinguished; it did not say that the Galashaw case was in error.
In fact, specifically Judge Wahl in the Galashaw case stated (p 10), "In the court’s opinion, rule 5015 of the Civil Practice Law and Rules has no application here, as it is implicit in said rule that an action or proceeding be still pending before the court. Here by execution of the warrant, this proceeding is no longer pending [citing Whitmarsh v Farnell (supra), 524 East 73rd St. Garage v Pantex Mills, 274 App Div 617, and O’Toole v Remy, Inc., 194 Misc 799].”
Accordingly, this court is not convinced that the Civil Court does in all respects have the power to set aside its warrant after it is executed, at least not until an appellate court specifically sets aside the holding in Whitmarsh v Farnell (298 NY 336, supra). This irrespective of Third City Corp. v Lee (41 AD2d 611, supra) (which incidentally denied tenant relief) but without explaining its conclusions, merely stated (p 612) "that the Civil Court may grant relief, in appropriate circumstances, from its own judgments or orders (CCA, § 212; CPLR 5015), even after execution of a warrant”. When are the circumstances appropriate? In the Lee case, respondent contended he never received a copy of the petition and notice and accordingly it would appear the court never acquired jurisdiction.
Returning squarely to the proceeding before this court, and *70 assuming arguendo that the court has jurisdiction to relieve the respondent, irrespective of the executed warrant, do the facts warrant exercise of its equitable powers? The answer is no. The reasons for this is that CPLR 5015 (subd [a]) states that the court "may relieve” a party from the effects of a judgment or order. The motion for relief is addressed to the discretion of the court, which discretion must be exercised in terms of the actual background of the case, taking into consideration lack of good faith, inexcusable procrastination or dilatory conduct. Moreover, when the position of the moving party has little merit, the court’s discretion and power to open the judgment should be subordinate to the policy in favor of finality of judgments. (See 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.03.)
Clearly here the respondent’s constant arrears in rent, necessitating several nonpayment dispossess proceedings might possibly fit into the criteria and scope of Rental Realty Corp. v Lawrence (14 Misc 2d 1070).
But the main point is that to be entitled to equitable relief, "there are certain maxims of equity which are particularly applicable to the conduct of the litigant seeking relief, such as: he who seeks equity must do equity, he who comes into equity must come with clean hands and equity aids the vigilant, not one who slumbers on his rights. These maxims involve the question whether the conduct of one seeking relief has been such as to entitle him to ask the court’s assistance. If it appears that the litigant has not acted in accordance with such maxims, as a general rule relief will be denied. Equity insists upon the conscientious obligations of the suitors.
"Equity will not aid one who consciously invites the wrong of which he complains. One cannot aid, encourage, or solicit the commission of a wrong about him and complain to equity that he has been injured by the act which he was instrumental in procuring to be done. So, where the result complained of is induced by plaintiffs own misconduct, equity will refuse relief’ (20 NY Jur, Equity, § 92).
Without belaboring the point further, in applying the above principles to the fact pattern, the court concludes that respondent is not entitled to any relief; the subject matter of these proceedings and the motion is denied in all respects.