OPINION OF THE COURT
Herbert A. Posner, J.
This is a motion by a former tenant to be restored to possession of a residential apartment. The tenant claims that the landlord accepted the full amount of the default judgment, and, therefore, had no right to subsequently evict her. The landlord claims that since the money was accepted after the warrant of eviction was issued, they still could evict her since there was no longer a landlord-tenant relationship. The landlord relies heavily on its interpretation of New York City Housing Auth. v Torres (61 AD2d 681).
The issue to be decided in this case revolves around the interpretation of one sentence in the Torres decision, upon *316 which not only the landlord relies but also Judges of this court.[1] In the middle of the next to last paragraph of the decision, the court stated: "The payment of that rent after issuance of warrant does not result in automatic vacatur of the warrant (Real Property Actions and Proceedings Law, § 749, subd 1) and, in the absence of good cause shown, the court should not effectuate vacatur (Real Property Actions and Proceedings Law, § 749, subd 3).” (61 AD2d 681, supra, p 684.)
Semantics is defined as "the branch of linguistics concerned * * * with contextual meaning”.[2] While linguistics (the tree) is a science, it is apparent that semantics (the branch) is an art. The interpretation of the meaning of words (within their context) does not lend itself to scientific exactitude. This is even more so when dealing with words used in a legalese context. When practicing any art, it is helpful to use tools of the trade. While there are no canons dealing with decisional interpretation, as such, we do have a body of canons dealing with statutory interpretation, which should be just as apt for decisional interpretation. McKinney’s Consolidated Laws of New York, Book 1, Statutes, § 96 states: "a basic * * * consideration in the interpretation of a [decision] is the general spirit and purpose underlying its [writing] * * * and that construction is to be preferred which furthers the object, spirit and purpose of the [decision].”
Before we analyze the legal interpretation of the language in Torres (quoted above), let us first examine the facts in this case so they can be compared with the facts in Torres.
THE FACTS
The respondent tenant, Gloria Foster, testified that on January 23, 1979, she found a 72-hour notice affixed to her apartment door informing her that she was to be evicted on January 25, 1979.[3] Ms. Foster testified that she immediately *317 went to the bank and obtained a check for the amount of the judgment ($862.90) plus January rent ($275.25). When she attempted to give the check to the superintendent, he refused to accept it and told her she was to be evicted on the 25th of January. The next day, January 24, 1979, she called the Marshal who referred her to the attorney who, in turn, referred her to the management office. After a phone conversation with someone in the management office she was told to get a bank check for the exact amount of the possessory judgment, $862.90, and to give it to the superintendent. She obtained the check and gave it to the superintendent the evening of January 24, 1979. The next day, while at work, a neighbor called to tell her that her furniture was being moved out of her apartment. By the time she got home, a new lock was on the door and she was out of possession. The superintendent testified on behalf of the landlord. He confirmed everything that Ms. Foster said, and added some additional facts (that she was unaware of). When she came to him the evening of January 24, he testified that it was too late (7:00 p.m.) for him to check with his office as to whether he should accept her check. Therefore, he took the check with the intention of calling the management office the next morning. When he called the next morning and told them he had the tenant’s check for $862.90, he was told to "send it in to the office”. The eviction took place later in the day.
THE FACTS IN "TORRES”
The Torres case also involved the issuance of a warrant of eviction after a default judgment. However, in the Torres case there were three significantly different facts: 1. In Torres the New York City Housing Authority (landlord) refused to accept a tender of the rent after the warrant was issued.
2. The only so-called "payment” of rent in Torres was a payment into court, pursuant to the court’s direction.
3. In Torres, when the Trial Judge granted the motion to set aside the default, the landlord still refused to accept the rent deposited with the court.
THE INTERPRETATION OF THE LAW
Based upon the facts of the Torres case, common sense *318 clearly indicates that when the Appellate Division referred to "[t]he payment of that rent”, they were referring to the payment of the rent into court. In no way can those words be construed to mean a payment to the landlord, because there was none. The landlord refused to accept any payment. The New York City Housing Authority was entirely correct in their position that once the warrant was issued, there was no landlord-tenant relationship (Real Property Actions and Proceedings Law, § 749), and, therefore, they had a right to refuse the rent money, whether offered by the tenant or by the court.
Now, we come to the question of the legal result flowing from the acceptance by J A R Management Corp. of the rent prior to the execution of the warrant. This court is of the firm belief that such act by the landlord voluntarily restored the landlord-tenant relationship and automatically vacated the warrant of eviction. Hence, the dispossession of the tenant later in the day (Jan. 25, 1979) was tantamount to a wrongful eviction.
As a general rule, the courts have held that the execution of a warrant terminates the summary proceeding; and, therefore, without any "pending proceeding”, the court no longer has any jurisdiction (Whitmarsh v Farnell, 298 NY 336; Gooden v Galashaw, 42 Misc 2d 8; Sweet v Sanella, 46 AD2d 688; 524 E. 73rd St. Garage v Pantex Mills, 274 App Div 617; O’Toole v Suzanne Remy, Inc., 194 Misc 799).
However, true justice does not blindly follow a general principal of law without any exceptions. In the "interests of justice” and exercising the power granted the Civil Court under section 212 of the New York City Civil Court Act, and CPLR 5015, the courts have held that where some conduct on the part of the landlord was considered to be wrong (unjust), the court had the power to return the tenant to possession (Third City Corp. v Lee, 41 AD2d 611; Iltit Assoc. v Sterner, 63 AD2d 600; Papp v Mallei, 64 Misc 2d 739; Albany v White, 46 Misc 2d 915; Cumberbatch v Seymour, NYLJ, Aug. 1, 1978, p 10, col 2).[4]
The landlord petitioner cites Klugherz v Sutphin Food Shop (90 Misc 2d 63, mod 91 Misc 2d 262), wherein the landlord had *319 obtained a warrant of eviction upon the tenant’s noncompliance with a stipulation of settlement on which final judgment was entered in a nonpayment summary proceeding. Although the tenant obtained an order to show cause to stay the execution of the warrant and to vacate the consent judgment, alleging that the landlord had breached the terms of the stipulation, the warrant was executed, before the order to show cause was served.
The court denied the evicted tenant any relief since the proceeding had been terminated upon the execution of the warrant of eviction. Thus, the landlord in the instant case would deny the tenant any relief to repossess his apartment, since the warrant has already been executed and the tenant procrastinated in the payment of rent arrears.
However, as was specifically noted in Cumberbatch v Seymour (NYLJ, Aug. 1, 1978, p 10, col 2), the Civil Court in appropriate circumstances may exercise its jurisdiction even after the execution of the warrant of eviction; and the holding in Klugherz is not to the contrary, since in Klugherz there never was an acceptance of the rent by the landlord. There wasn’t even a tender of the rent.
In Hickey v Perez (n 1), the court cites Nysim Realty Corp. v Pardi (NYLJ, July 28, 1978, p 14, col 2)[5] as authority for the proposition that "the landlord can even accept the payment and still proceed to evict the tenant as long as the warrant had been issued prior to tender of the rent”. However, nowhere in the Nysim decision does Judge Milano (even by obiter dictum) stand for this proposition. To the contrary, he makes it very clear that "a mere tender of rent due where a landlord refuses to accept same, subsequent to the issuance of this legal mandate [the warrant] cannot result in an automatic vacatur of same.” Judge Milano refers to "mere tender” and "nonacceptance” four times in his decision. While comparing another case (Beaver Equities v Kirin Rest., NYLJ, March 7, 1972, p 2, col 1) he states, "[i]n that case, the court held that tender made after issuance of the warrant but which was not accepted did not revive the lease which had been terminated by said issuance. It may be revived by payment and acceptance of rent if this is the intention of the landlord.” (NYLJ, July 28, 1978, p 14, col 3.)
*320 CONCLUSION
This court finds the landlord, itself, restored the landlord-tenant relationship by its tacit acceptance of the rent before the execution of the warrant. Simple justice demands that if a landlord intends to accept the money and evict, that he has a positive duty to so inform the tenant. Intentions are legally interpreted by words and deeds not by hidden thoughts, executed after the other party has relied upon the unconcealed actions. While not a blatant "fraud”, this type of conduct lends itself to "fraud by omission”. The landlord, by taking the tenant’s money without a warning that the eviction will, nevertheless proceed on schedule, has lulled the tenant into a false sense of security, thereby depriving the tenant of the opportunity to go to court for a show cause order staying the warrant of eviction (Real Property Actions and Proceedings Law, § 749, subd 3). To permit the landlord to have "its cake and eat it too”, would open the door to many abuses. This the court cannot countenance, in the interests of justice and due process.
Accordingly, a final judgment of possession is hereby granted in favor of the tenant against the landlord. A warrant shall be issued forthwith and shall direct that the tenant be immediately restored to possession of her apartment.

. In Hickey v Perez (NYLJ, Dec. 12, 1978, p 12, col 2), Judge Nason states: "[t]he cases to the contrary hold that the issuance of the warrant terminates the relationship and therefore the landlord can even accept the payment and still proceed to evict the tenant as long as the warrant had been issued prior to tender of the rent. See New York City Housing Authority v Torres, 61 AD2d 681; Nysim Realty Corp. v Pardi, NYLJ, July 28, 1978, p 14, col 2 and cases cited in each.”

. Webster’s New World Dictionary of the American Language (2d ed).

. The landlord had obtained a default possessory judgment on January 1, 1979, because of tenant’s failure to answer the petition. A money judgment was not obtained because there had not been any personal service. A warrant was issued by *317 the court shortly thereafter and the Marshal posted a 72-hour notice on tenant’s door January 22, 1979.

. Additional cases supporting the Civil Court’s authority to restore a tenant to possession after the warrant has been executed are: Samid Realty v Placente (NYLJ, April 29, 1976, p 9, col 2); Rubin v Mzbaraz Candy Store (NYLJ, June 8, 1977, p 12, col 3).

. Affirmed Appellate Term, First Judicial Department (NYLJ, Feb. 23, 1979, p 4, col 2).