REICH v. COCHRAN et al.

(Supreme Court, Special Term, New York County. February 5, 1907.)

1. JUDGMENT—EQUITABLE RELIEF—MERITORIOUS CAUSE OF ACTION.

In order to entitle one to equitable relief against a judgment against him on the ground that it was obtained by fraud, and that it prevented a trial of his claim on the merits, it is necessary for him to show that if tried on the merits his claim would probably be found such as to lead to a judgment in his favor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 849–851.]

2. USURY—EVIDENCE—SUFFICIENCY.

On an issue as to whether there had been usury in a loan from defendant to plaintiff, evidence considered, and held insufficient to show usury.

3. MORTGAGES—ABSOLUTE DEED AS MORTGAGE.

The evidence to show that a deed absolute in form was intended to be a mortgage must be clear and convincing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 109.]

4. ATTORNEY AND CLIENT—DELEGATION OF AUTHORITY.

An attorney has authority to empower another attorney to appear for him and the client is bound by such appearance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, § 151.]

5. PROCESS—SERVICE—EVIDENCE AS TO SERVICE—SUFFICIENCY.

On an issue as to whether the affidavit of a process server, showing personal service was false, evidence considered, and held insufficient to show falsity of the affidavit.

Action by Lorenz Reich against William F. Cochran, in which Eva S. Cochran and others were substituted as executors of defendant who died pending the action. Judgment in favor of defendants.

Alton B. Parker and Max E. Harby, for plaintiff.

Samuel Untermeyer, James L. Bishop, Treadwell Cleveland, and Percy H. Stewart, for defendants.

BISCHOFF, J. Consolidated actions to set aside certain judgments and orders rendered and made in the course of litigation between the plaintiff, Lorenz Reich, and William F. Cochran, founded upon rights deemed to have been acquired by the said Cochran by virtue of certain leases, agreements, bonds, and mortgages made by the plaintiff to or with the said Cochran, which instruments are alleged by the plaintiff to be open to avoidance for usury upon an inquiry upon the merits, which inquiry has been prevented by the existence of these judgments and orders. In the year 1886, the plaintiff, the lessee of premises at the corner of Fifth avenue and Thirty-Third street, obtained a loan of $100,000 from Mr. Cochran upon the security of the lease, for the purposes of the hotel business which he desired to conduct at that place. Thereafter he obtained further loans, and, ultimately, the premises came into the possession of Mr. Cochran as the result of an assignment to him of the lease by the plaintiff, and the making of a final order in a certain dispossess proceeding, instituted by Cochran, as landlord, against this plaintiff, as tenant, in the Sixth judicial district court in the month of August, 1892, followed by the execution of a warrant in a later proceeding on March 17, 1893. The contention of the plaintiff is

that the assignment of the lease to Cochran was made as security for usurious loans; that the final order in summary proceedings availed of by Cochran as an adjudication conclusive against this claim of usury whenever sought to be litigated was obtained by fraud and collusion, and that both in the conduct of this summary proceeding and in subsequent litigation in which this final order was held to be a bar to the claim of usury this plaintiff's then attorney caused the opportunity for a hearing upon the merits to be lost through a negligent omission of his professional duty. · Upon an earlier trial of the action (reported 41 Misc. Rep. 621, 85 N. Y. Supp. 247) the trial court determined that the transactions between the parties were in fact tainted with usury, and rendered judgment for the plaintiff setting aside the assignment of the lease and other instruments, and, as well, the various orders and judgments which had served, without a hearing upon the merits, to affirm the validity of the usurious transactions. Upon appeal a new trial was ordered upon the ground that the evidence did not support a finding of fraud on the part of Mr. Cochran or of his agents in procuring the final order of August 17, 1892, and that negligence alone upon the part of Reich's attorney of the character disclosed by the proof did not suffice as the basis of equitable intervention. Reich v. Cochran, 105 App. Div. 542, 94 N. Y. Supp. 404. It is to be noted that the action was submitted to the trial court when first tried upon the theory that the relief to be afforded could extend to the actual setting aside of the various instruments deemed to be affected with usury—not merely to the removal of the bar of the former adjudication—and the scope of the action appears to have been so assumed upon the appeal. 105 App. Div. 544, 94 N. Y. Supp. 404. For the purposes of the present trial, however, I must take the issues as the pleadings present them, in accordance with the defendant's insistence, and those issues are not affected in any way by the proceedings upon the first trial and by the consent, which may have been implied from the attitude of the parties at that time, to broaden the prayer for relief for the purposes of the decision then to be made. As defined by the pleadings the purpose of the action is to obtain relief against the orders and judgments which have prevented a trial of the plaintiff's claim of usury upon the merits, and while the question of usury is in the case it is so only because the plaintiff must meet the burden of showing that, if tried upon the merits, his claim would probably be found sufficiently persuasive to lead to a judgment in his favor. Freeman on Judgments, (4th Ed.) § 498; White v. Crow, 110 U. S. 187, 4 Sup. Ct. 71, 28 L. Ed. 113; Mass. Life Ins. Ass'n v. Lohmiller, 46 U. S. App. 103, 74 Fed. 23, 20 C. C. A. 274. This question of the probable merit of the claim of usury, however, involves something more than the acceptance of the plaintiff's prima facie proof; the probability of a party's success upon a given assertion of facts depends upon the character of the proof which is to be offered to meet that assertion, and so, for the purpose of this trial, I am still to consider all the proof offered by both sides upon the question of usury, not as related to a demand for relief against the instruments based upon the debt, but as bearing upon the right to the relief actually demanded—a decree which should give re-

lief from the adverse adjudications of record so far as the plaintiff may otherwise present equitable ground for an interference with those adjudications. Examining the evidence, which has been produced upon the subject of the claim of usury, I am impressed with the improbability that the claim has any actual foundation. It rests for its establishing upon the testimony of the plaintiff and upon inferences which, in the light of his testimony, the court is asked to draw from surrounding circumstances; but the plaintiff, as a witness, has by his demeanor on the stand, by his evasions, inconsistent statements and deliberate mis-statements, so thoroughly discredited himself that reliance upon his testimony to aid in the solution of any question of fact is quite impossible. Upon the first trial the court found that there was usury, and this finding was approved on appeal, but the finding depended to a substantial degree upon the acceptance of the plaintiff's testimony to certain facts which, if present, gave color to the claim that usury was intended, and upon review, the record contained sufficient evidence, because the facts found had the support of testimony which had been credited by the tribunal of fact. Colored by this testimony all the transactions between the parties took on the tinge of usury; without it they were what they appeared on their face to be—valid business dealings—and my estimate of the probative force of the plaintiff's testimony is such as to lead me to reject it totally. The first loan of $100,000 in May, 1896, was certainly not usurious because of the circumstance that Mr. Reich made a payment to Mr. Fitch, the attorney who negotiated the loan. This payment was not received by Mr. Cochran nor was it made for his benefit, and the validity of the loan was in no way affected by the borrower's payment of commissions to a third party. This was followed by an application for an increase of the loan to $130,000 in September of that year. It is here that an usurious agreement is claimed to have been made in the first instance, in that, as the plaintiff testifies, Mr. Cochran demanded and obtained, in addition to the reservation of 6 per cent. interest, a lease of a valuable suite of rooms in the hotel free of charge during the period of the loan. At this time the hotel had not been built, and Mr. Cochran, as the plaintiff states, had suggested that he should be given some interest in the enterprise as a partner if he was to advance moneys on the security of the lease.

After some discussion of the proposed loan Mr. Cochran wrote a letter to his attorney, Mr. Fitch, and gave it to the plaintiff for delivery. Before delivering this letter, however, the plaintiff caused it to be photographed and the photographic copy was produced by him at the trial. The letter is as follows:

"Mr. Theo. Fitch—My Dear Sir: In an interview with Mr. Lorenz Reich this day I learned that to carry out his plans he will require me to increase my loan to $130,000. I have suggested to him, in view of my contributing so large an amount, that he give me an interest in the lease. He proposes in lieu of this that he give me the entire and sole use of a suite of three rooms on the second floor, Fifth avenue front, for the term of the loan. If there be no legal objection to such a consideration I am willing to so increase the loan, subject to such an agreement as you may draw or approve. I expect to be home on Saturday, September 18th.

"Yours truly,                                   William F. Cochran."

Why was the plaintiff at such pains to preserve proof of the contents of this letter that he must have it photographed? There can be but one answer. He had in mind, at the very inception of his dealings with Mr. Cochran, in the year 1886, the preparation of a case of usury; yet, as he would have this court believe from his testimony, he did not at that time know what usury was, what the law was upon the subject, or what could lawfully be charged for forbearance upon a loan of money. This one circumstance discloses the plaintiff to be not the innocent and untutored victim of an avaricious lender, as he would be viewed, but as a borrower seeking to entrap his creditor into some act which it was hoped, even before the loan was made, would suffice to relieve him from any enforceable duty to repay. As a matter of fact the letter produced to show Mr. Cochran's usurious intentions does not have a very sinister import. The suggestion of the lease of the rooms for nothing was, as is stated in the letter, only the suggestion of Mr. Reich, and the attorney's advice was asked. Mr. Fitch, when this letter was brought to him, told Mr. Reich that he would not advise a loan on such terms, and, as appears from the evidence, the loan, when made, involved no agreement for a lease. Mr. Reich's testimony that a "receipted lease" was signed by him and delivered to Mr. Cochran is opposed to the probabilities, and I do not accept his statement. With the extreme care which he evinced in preserving evidence of the letter which suggested such a lease it is difficult to conceive his omission of similar care in preserving some proof of the lease had the paper ever existed. At a later period Mr. Cochran, when the parties became partners, did reserve a suite of rooms for his own use, but that he should have taken a "receipted lease" at the time of the $130,000 loan, against the advice of his attorney and wholly in secret, is something which strikes the mind as too improbable for credence. I find no probable ground, therefore, for the claim of usury in this loan, nor was there any unlawful reservation when the loan was next increased to $175,000. The agreement provided for interest upon sums actually advanced and for 3 per cent. upon sums kept in readiness for advancement, but there was no usury here, since if interest were charged and paid upon sums not kept in readiness there would have been merely a breach of the agreement upon Mr. Cochran's part. There is no evidence that the parties had any understanding that the sums were not to be held in readiness by the lender; hence there was no unlawful reservation of interest by agreement, and, so far as appears, the transaction was a perfectly valid business arrangement. In April, 1887, at the time of this loan, a special partnership was formed between Reich and Cochran for the conducting of this hotel business. Later, on February 11, 1888, the partnership was dissolved, the leasehold property was transferred to Mr. Cochran in consideration of $275,000—being the surrender of his mortgage of $175,000, the repayment of $25,000, his special capital, and the advance by him of $75,000 to pay the firm's debts—and the premises were leased to Reich by Cochran at a certain scale of rental with a right to repurchase at an agreed sum.

The plaintiff's claim is that this transfer, in form a sale, was un-

derstood by the parties to be a mortgage to secure the repayment of the sums advanced by Cochran, that the rent reserved in the lease from Cochran to Reich was really . interest upon the loan, and that, upon a calculation of all the sums agreed to be paid by the tenant over the lessor's obligation to the owner of the fee by virtue of the ground lease, it would appear that a sum substantially in excess of the loans and lawful interest was ultimately to be paid by this tenant, Reich, in his character of a borrower. I cannot hold that the proof is of the quality required to support a judicial determination that this sale was a mortgage, and so usurious. There was no inadequacy of consideration such as would cast suspicion upon the transfer, for Cochran gave up his interest in the partnership which, if the plaintiff's own proof as to the value of the lease for business purposes is correct, must have been, in prospect, an item of very substantial value, and the rent reserved in the lease from Cochran to Reich was, upon the same basis, quite low enough to represent a very valuable return to the tenant during the term of the lease. The whole claim that this transfer was no transfer, but a cover for an usurious mortgage, depends upon the accuracy of the plaintiff's testimony to alleged admissions by Mr. Cochran, and also upon such corroborative proof as is furnished by the testimony of the witness Stewart, read at the trial, as to a statement made by Mr. Cochran when these papers were about to be signed, that he (Mr. Cochran) wanted the papers for his "protection." The value of this evidence depends upon the sense in which the speaker used the word "protection," as well as upon the correctness of the witness' recollection that the word was used; and the fact that Mr. Stewart, acting at the time as Mr. Reich's attorney, advised him to sign the papers is not compatible with an understanding upon his part that the real transaction was so totally at variance with what the papers expressed. Again, Mr. Reich's written declarations for a period of many months after the transfer were all to the effect that this transfer was absolute. He continuously signed receipts which, in form, were directly in recognition of the fact of the sale, and, as I have stated before, the character of his testimony is such that, where it is in conflict with the probabilities or with other evidence, I must unhesitatingly reject it. While Mr. Cochran was not called as a witness at the earlier trial, when he was still alive, that fact, in view of the proof as to the state of his health at that time, taken with the fact, as appears from the record, that he had on other occasions made oath in judicial proceedings whenever the question arose that the transfer was not subject to any verbal agreement, does not lead to an inference of any strength in favor of the plaintiff upon the issue which he tendered. Two isolated expressions in letters from Mr. Cochran to Mr. Reich, after the transfer and relating to other circumstances, have been referred to as indicating that the plaintiff's version of the agreement is correct. In one letter Mr. Cochran said: "It seems as if you had an equitable claim;" in another: "You may rely upon my fulfilling every agreement, oral or written." Each of these letters, however, was written with regard to matters which had no actual connection with the terms of the original agreement be-

tween Reich and Cochran, and the words used had reasonable application to the matters then in hand; that is, to the renewal of the ground lease by the principal landlord, to the situation in which the plaintiff found himself with respect to that renewal, in view of the loss occasioned by the landlord's building operations nearby, and to Mr. Cochran's promises in the matter of negotiations for the renewal. In order to give these writings an application favorable to the claim that the purported sale to Mr. Cochran was a mortgage it would first be necessary to accept Mr. Reich's version of the transaction itself, for the writings do not necessarily refer to anything of the kind, but this, as I have noted, the inherent infirmities of his testimony render impossible of acceptance. Giving heed to the rule that the solemn and deliberate writings of parties, made with the apparent intention to establish definite relations with regard to property rights, are not to be brushed aside upon proofs of an infirm, or inconclusive character. Cadman v. Peters, 118 U. S. 73, 80, 6 Sup. Ct. 957, 30 L. Ed. 78; Jones on Mortgages, § 260; Barton v. Lynch, 69 Hun, 1, 23 N. Y. Supp. 217. I have no doubt that the plaintiff has failed to disclose a probably meritorious case of usury in this transfer. "The evidence required to show that a deed absolute in form was intended to be a mortgage must be clear, unequivocal and convincing" (Barton v. Lynch, supra); and in the case of Ensign v. Ensign, 120 N. Y. 655, 24 N. E. 942, it was said that the existence of an oral defeasance must be established by clear and conclusive proof and beyond a reasonable doubt. So, too, of usury, it was said in Marvin v. Feeter, 8 Wend. (N. Y.) 533:

"Usury is a defense which must be strictly proved, and the court will not presume a state of facts to sustain that defense where the instrument is consistent with correct dealing."

My finding is that if these various judgments and orders were open to attack upon grounds sufficient for equitable cognizance, still the plaintiff has no standing to invoke equitable relief since he has not been deprived of an opportunity to litigate a claim of probable merit; but, as I must also hold, the facts do not suffice for an attack upon these various adjudications. The matter was discussed by the Appellate Division at the time when the new trial, now concluded, was ordered, and upon this branch of the case the condition of the proof remains substantially the same. It is claimed for the plaintiff that the final order in summary proceedings of August 17, 1892, was made without jurisdiction, in that the precept was not served upon the tenant Reich personally or by delivery to a person residing upon the premises, as required by law, and that there was no authorized appearance for him upon the return day. Upon the question of jurisdiction, the marshal's certificate shows service of the precept upon Frederick Walmsley, a person in charge of the premises during the absence of the tenant on August 12, 1892, and the contention of the plaintiff is that Walmsley, a clerk of the hotel, was absent from the city upon a vacation during the first two weeks of August of that year. The proof, however, is not sufficient to establish this fact and to override the certificate of service. Walmsley, called as a witness,

was unable to say that he was not at the hotel on the 12th of August, 1892, or that he was not served with the precept, and the testimony of Kelly, a fellow clerk, discloses considerable doubt in the witness' mind as to whether Walmsley was actually away on this particular day or not. The witness Connor was able to say only that Walmsley was absent on the day when a paper from the court was thrown upon the floor of the hotel office, but this paper, it appears, could not have been the precept, since Connor gave it to Mr. McCurdy, Reich's attorney, who destroyed it in his presence, while the precept itself was not destroyed, but was in Mr. McCurdy's possession on the return day. The books kept by these clerks would have shown whether or not Walmsley was engaged with his duties on August 12th, so Kelly testified, but these books, the property of the plaintiff, were not produced, and are said to have been lost. The burden of proof to impeach the certificate of service has certainly not been met by the plaintiff, and my finding must be that the District Court had jurisdiction of the summary proceedings. So, too, agreeably with the opinion expressed by the Appellate Division (105 App. Div. 560, 94 N. Y. Supp. 404), I hold that an authorized appearance was made for this plaintiff upon the return day of the precept. There remains for discussion the claim that equity should relieve the plaintiff from the effect of the final order and of the judgments founded upon it, because of the alleged fraud of Mr. Cochran when instituting the proceeding, and also because of negligence on the part of Mr. McCurdy, the plaintiff's attorney and counsel, in the course of the succeeding litigation.

The fraud is predicated on the alleged falsity of the affidavit of one Bagg, a process server, to the effect that in the city of New York, on the 4th day of August, 1892, he personally served upon Reich, this plaintiff, the statutory written demand for rent as a preliminary to the dispossess proceedings. It is claimed that this affidavit was knowingly false, and that Cochran, when availing himself of the assertion of service, was chargeable with knowledge of the fraud. Upon the evidence before me I do not find that there was fraud in the matter of the service or proof of service of the demand for rent. There is nothing to show that Bagg did not honestly believe what he stated when making the statement that he had served this paper upon Reich, assuming that the service was not actually made, but I am not impressed with the evidence that the paper was not served. Bagg testifies that he served the demand as stated in his affidavit. To negative this the plaintiff states that he was continuously at his country home at Brentwood, Long Island, from July 31st to August 17th, and was not in the city of New York during that period. Three witnesses, his guests at Brentwood at the time in question, testify that the plaintiff did not go to the city during the 16 days, according to their recollection; but in view of the fact that Brentwood was accessible from the city in an hour's journey the recollection of these witnesses after the lapse of 12 years (when they first testified) is far from conclusive. Their general impression of Reich's presence during their stay as his guests need not necessarily have been affected by his absence for three or four hours on any one day, and there is evidence which

would point quite clearly 'to the fact that he was in the city during this period. Checks, not postdated, were drawn up at the hotel, were signed by Reich, and were cashed on their respective dates, and as to one, at least, the possibility that a messenger carried them is excluded. This check was written out by an employé at the hotel on August 1st, drawn to the order of Frederick Deeg, and signed by Reich; then it was indorsed by the payee and again indorsed, after the payee's name, by Reich, and was paid by the bank on August 1st, the same day. If Reich were present in the city once during his alleged continuous sojourn on Long Island the force of the evidence in his behalf is so far weakened as to afford no answer to the assertion that he was present on still another occasion, and I accept the fact to be that he was served with the demand for rent as determined in the summary proceedings. Without the presence of fraud it has been settled by the Appellate Division, for the purposes of this case, that the asserted neglect upon the part of the plaintiff's one-time attorney, Mr. McCurdy, cannot avail the plaintiff nor justify the granting of the relief sought. The history of the litigation between Reich and Cochran has been reviewed by the Appellate Division in the opinion delivered in this case, and the conclusion has been expressed by the court that the omission of Reich's attorney to interpose the defense of usury in the dispossess proceedings and to try the question upon the merits in the equity suit before Mr. Justice Ingraham, while viewed technically as neg.igence, could not suffice for a decree such as the plaintiff seeks, the negligence being unrelated to any fraud upon the part of Mr. Cochran or his agents. It appears that Reich's attorney had conducted this litigation upon the theory that the final order in summary proceedings would not serve as an adjudication to bar the defense of usury, if sought to be interposed in a later judicial proceeding, and this theory he maintained in the equity suit referred to and upon successive appeals. It has been determined that his theory was a mistaken one, but there can be no question of the honesty of this attorney in his adoption of that theory nor of his diligence in presenting it to the court. Upon the former trial, with the finding that Reich had a defense of usury, the attorney's mistaken view of the law, which led to the loss of an opportunity to present that defense, was held to be negligence, although as such the Appellate Division has determined that there was no basis for a decree relieving the plaintiff from the resulting bar of the adjudication. In harmony with my finding that Reich had no defense of usury of probable merit, I also find, however, that there was no negligence upon the part of Mr. McCurdy in his conduct of the various litigations, since the omission to set up a futile defense and to attempt to prove it involved no lack of reasonable diligence upon the attorney's part, nor did the omission prejudice the client through a breach of professional duty. Upon the whole case, for the reasons which I have stated, there should be judgment for the defendants upon the merits, with costs. I have noted my disposition of the requests to find upon the margin of the papers, and they have been left with the clerk.

Proposed decision in accordance with the views expressed by me, and embodying such findings as have been made at the request of the parties may be submitted on notice of settlement.