George Starke, J.
The motion in all respects is denied. Although there was a trial on June 9, 1965, the petitioner (landlord) seeks to open its default prior thereto in opposing a motion brought by the Legal Aid Society to vacate a final judgment for the petitioner on default. Said motion had been adjourned several times at the request of petitioner’s attorney. It resulted in the order of June 4 (not May 24 as alleged by petitioner) which the petitioner now seeks to vacate. When the petitioner defaulted on that date, the court vacated the final judgment for the petitioner on default and set the proceeding down for trial on June 9.
Prior to the trial date petitioner did not move to open its default in opposing the motion. On the trial date, the petitioner elected to go to trial. Petitioner was asked on the record whether it wished an adjournment for the purpose of vacating its default on the motion or whether it wished to proceed to trial. Having elected to go to trial and voluntarily participated in a trial on the merits, the petitioner waived its right to vacate its default in opposing an earlier motion to vacate a final judgment on default (Grazi v. Douglaston Estates, 17 Misc 2d 512).
Other relief is sought here by the petitioner. Although not specifically demanded, the petitioner seeks to have the court reverse its decision rendered after trial.
The motion papers recite that the president of the petitioner’s corporation was “ out of town on June 9, 1965, the date of the trial and was unable to testify.” So that, in reality, the petitioner now presents an excuse for attempting to vacate the decision rendered after trial, and the motion will be treated as such. The reason that petitioner’s attorney did not specifically *738 ask the court to set aside its own decision is because he was under the mistaken impression that this court does not have that power in a nonjury case. But the court does have that power today. This comes by virtue of CPLR 4404 (subd. [b]). It is true that prior to its enactment this court or its predecessors (City Court and Municipal Court) did not have such power. However, this power should be exercised only under proper circumstances. Those circumstances are not present here. The facts in this case do not warrant the exercise of this power. There is absolutely no basis or justification for the court to change its decision of June 9 after trial. At the close of the petitioner’s case, the court granted the motion to dismiss the petition as a matter of law on the ground that the petitioner failed to make out a prima facie ease. The original decision rendered after trial is therefore adhered to, and the motion to set aside the decision is denied. Petitioner’s remedy is to appeal.
And now we come to a most troublesome problem which has plagued this court and one of its predecessors, the Municipal Court: Does this court have the power to reinstate into possession a tenant who has been wrongfully evicted, particularly when the landlord has rerented the premises and a new tenant is in possession?
Under the Municipal Court Code, the court had no such power. The Judges’ hands were tied. The court could not go beyond finding a final order in favor of the landlord or the tenant. It could only decide who was entitled to possession. It could not direct the reinstatement of a tenant wrongfully evicted. The tenant was-in such instance relegated to seeking relief in the Appellate Term or the Supreme Court. In most cases this was tantamount to a denial of justice because most tenants were financially unable to pursue this remedy. That this method was onerous and expensive, and a practical impossibility for most tenants in this unfortunate predicament is a universally known fact borne out by the Legal Aid Society attorneys.
Fortunately for such tenants, the court now finds that this situation has been corrected by the Legislature. Aside from granting equity powers to the Civil Court which it or its predecessors never had, the Legislature has empowered this court to reinstate into possession a tenant wrongfully evicted. This power emanates from section 212 of the New York City Civil Court Act which provides:
“Additional jurisdiction and powers. In the exercise of its jurisdiction the court shall have all of the powers that the supreme court would have in like actions and proceedings.”
*739 It is thus plainly obvious from the heading that the Legislature granted additional powers to the Civil Court' — powers beyond that which it or its predecessors possessed. The clear, precise and unmistakable meaning of the language contained in this section is that: If the Supreme Court has the power, under proper circumstances, to reinstate into possession a tenant wrongfully evicted even where a new tenant is actually in possession, then the Civil Court has that same power.
There is no question but that the Supreme Court has this power under proper circumstances by virtue of the broad equity powers it possesses (N. Y. Const., art. VI, § 1; Judiciary Law, § 140-b; CPLR 5523, 6301, 6311, 5015, subd. [b]; see Mattson v. Jarmag Realty Corp., 203 Misc. 375).
This court finds that the Civil Court does now have the same power as the Supreme Court to reinstate into possession a tenant wrongfully evicted. An interpretation of section 212 was given by the Appellate Division in Matter of MacLeod v. Shapiro (20 A D 2d 424) wherein the court held that under this section the Civil Court had the same power as the Supreme Court in the matter of granting stays (which stays are fair, just and reasonable) of the issuance of a warrant. It ruled that while CPLR 2201 was applicable to the Supreme Court on the subject of that court’s power to grant stays, it was equally applicable to the Civil Court by virtue of section 212.
Now comes the question as to whether this power should be exercised here.
The only person named as respondent (tenant) here is Decker and he was the only one served. ‘ ‘ Eocke ’ ’, the actual tenant or occupant, was never served with a copy of the precept and petition and was not even named as a party. “ Eocke ” was a necessary party to the proceeding (Fults v. Munro, 202 N. Y. 34; Cohen v. 515 Broadway Realty Corp., 150 Misc. 288). No motion was ever made to make him a party. In fact, landlord’s attorney refused to accept the suggestion of the court that “ Eocke ” be made a party to the proceeding. Thus this court never acquired jurisdiction over “Eocke”. It follows, therefore, that the eviction of “ Eocke ” was unlawful and that the petitioner has subjected itself to an action at law for damages resulting therefrom.
The Legal Aid Society contends that “ Eocke ” and not “ Decker ” is the actual occupant of the apartment and has been the rent-paying tenant continuously since October, 1963. The society further maintains that “ Decker ” is the “ super ” in the building and was installed as the “ dummy ” tenant of the subject apartment as well as several other apartments in the *740 building, and that, by this scheme, unlawful and exorbitant rents are being collected. This question is not being passed upon here because “ Rocke” is not a party to the proceeding and the counterclaim for overcharges was discontinued without prejudice. If the facts charged by the society are true, this court previously decided in the case of Emray Realty Corp. v. Thomas (L & T No. 130156-1955, Mun. Ct., 10th Dist., Manh.) that such a landlord is committing a fraud by indulging in a ruse and subterfuge.
The question of whether the court shall reinstate “Rocke ” into possession becomes academic at this point. “Rocke” is presently in possession of the apartment. Sometime after the court rendered its decision on June 9 dismissing the landlord’s petition, “ Rocke ” took possession of the apartment, on behalf of himself and the other members of his family, by ousting the new tenant to whom the landlord had rerented the premises. Whether “Rocke” repossessed his own apartment by use of peaceful means, as claimed by the Legal Aid Society, or whether he gained access with the aid of a shotgun at an untimely hour, 2 o’clock in the morning, by the use of force and violence, as claimed by the landlord, is a matter for determination by the Criminal Court. When deprived of possession without right, a tenant has the right to re-enter, after dispossession is complete, if he can do so peaceably (Fults v. Munro, supra).
That portion of the petitioner’s request for relief now seeking repossession from “Rocke” must of course be denied because £ ‘ Rocke ’ ’ was never made a party to the proceeding and the court never acquired jurisdiction over ‘1 Rocke ’ ’.
The new tenant stated in open court that he has been paying $90 a month. “ Rocke ” claims to have paid $90 a month to the ‘ ‘ super ” for the past one and a half years. The legal maximum rent appears to be $44.96 per month (reduced March 4, 1965 from $56.20). If these facts be true, the landlord has subjected itself to overcharge actions both by the “ new ” tenant and by “Rocke” as well. In addition, both the “new” tenant and £ ‘ Rocke ’ ’ have actions at law against the landlord for damages. Since the landlord wrongfully evicted “ Rocke”, it never acquired the lawful right to place the ‘£ new ’ ’ tenant into physical possession of an apartment to which “Rocke” still had legal possession.
It is hoped that an appeal is taken so that the higher courts can rule on the question of whether the Civil Court has the power to direct the reinstatement into possession of a tenant wrongfully evicted, particularly where a new tenant is actually in possession.