George Starke, J.
The court is directly confronted here with the proposition of reinstating into possession a tenant wrongfully evicted. The facts clearly warrant reinstatement. And so, for the first time, this court actually does now direct in this case that the tenant be reinstated into possession for the reasons hereinafter indicated.
This case follows on the heels of a decision recently rendered by this court in Marluted Realty Corp. v. Decker (46 Misc 2d 736), wherein the subject of reinstatement was dealt with at length. What was anticipated there is now a reality; what was said there by way of prophetic dicta must now be determined as a matter of law. For now, the court is compelled to face the problem of reinstatement head on.
The landlord obtained a final judgment by default on June 2, 1965, for nonpayment of March and April rent. The tenant did not appear in court because, on May 5, 1965, long prior to the granting of the final judgment, he sent a Western Union money order to the landlord for the amount demanded in the petition together with $4.50 disbursements. The landlord admits receiving the money order on May 5, 1965, but claims that on the following day he returned it to the tenant by ordinary mail, as in the interim another month’s rent, May rent (not included in the petition), became due.
The tenant contends he never received the return of the money order and, consequently, felt it was unnecessary for him to appear in court. Upon the tenant’s default in appearance, *917 and on the application of the landlord (who did not inform his attorney or the court that he had received a money order), a final judgment on default was granted on June 2, 1965. Landlord’s attorney made the required request by letter on May 28,1965 for the final judgment and issuance of the warrant, stating that the rent demanded in the petition had not been paid.
The warrant was thereupon issued on June 4, 1965. (During the period of May 5 to June 6, the landlord made certain requested repairs to the apartment and had several conversations with the tenant but never discussed the nonpayment of May and June rent or the alleged return of the money order. In fairness to landlord’s attorney, it must be added that it appears he had no knowledge of these facts or of the receipt of the money order by the landlord until after the execution of the warrant when he was served with a copy of the order to show cause to vacate .the warrant.)
On June 6, 1965, the warrant was executed and the tenant was evicted after service of the 24-hour notice by the Marshal. The tenant did not receive the notice until he returned home from work that evening. Because of the time element, he was unable to obtain an order to show cause in time to prevent his eviction and the members of his family.
Having received payment of the proper sum due (the amount demanded in the petition), the landlord had no right to seek a final judgment, and, of course, no warrant should have issued. Where prior to the issuance of the warrant, the landlord in a nonpayment proceeding refuses to accept a timely tender of the proper amount of rent, he is not entitled to the issuance of the warrant (Matter of Vaile v. Moritt, 222 N. Y. S. 2d 290; Young v. Lucas, 1 A D 2d 754; Greenberg v. Cagle, 212 N. Y. S. 2d 767). A proper tender, as here (rent and costs) bars a final judgment; and there being no final judgment, there can be no warrant to evict thereunder. A final judgment in a nonpayment proceeding is a dual one. It provides for a judgment of possession as well as a money judgment. On the facts here, the landlord was not entitled to either. The final judgment must be and it is set aside and the warrant vacated, without prejudice to an action at law to recover the proceeds of the “ lost ” money order.
But now we come to the all-important question which has plagued this court and its predecessors for many years: “ Does the Civil Court have the power to set aside a final judgment and warrant after the warrant has been executed, and direct the reinstatement to possession of a tenant who has been wrongfully evicted? ”
*918 Until now, as can be seen from two recent Civil Court decisions, our courts have always held that where a warrant had not as yet been executed, this court retained jurisdiction to extend the stay or vacate the warrant (Matter of Joseph v. Cheeseboro, 42 Misc 2d 917). But once the warrant had been executed, this court no longer had power to open the tenant’s default and vacate the warrant as the court was without jurisdiction, there being no proceeding pending (Gooden v. Galashaw, 42 Misc 2d 8). The following authorities are cited by the above cases: Whitmarsh v. Farnell (298 N. Y. 336); 524 East 73rd St. Garage v. Panteax Mills (274 App. Div. 617); O’Toole v. Remy, Inc. (194 Misc. 799); Rasch, New York Law of Landlord and Tenant and Summary Proceedings (vol. 2, §§ 1467, 1468) and Matter of Walker v. Ribotsky (275 App. Div. 112).
Hence, where a tenant was wrongfully evicted, the Civil Court and its predecessors would regretfully refuse to take jurisdiction on the ground that, since the warrant had already been executed, the proceeding was no longer pending. Our court would therefore deny without prejudice the application for reinstatement of a tenant wrongfully evicted and gently refer the tenant to the Appellate Term for relief or suggest that a reinstatement proceeding be brought in the Supreme Court. The tenant generally would be given a polite reminder that he could also bring an action at law for money damages for the wrongful eviction.
But, to the tenant and his family in this sad and sorry plight there is something of greater importance than money damages at such a time. It is the vital and pressing question of getting back at once into the apartment. Of what good is it to say to the tenant “ wait several months before the Supreme Court can take action to return you to the home from which you have been wrongfully evicted?” In this type of situation, time is really of the essence. Furthermore, the suggested Supreme Court procedure proves too expensive and practically impossible for most tenants in this unfortunate predicament. It is tantamount to a denial of justice to those without .financial means, as can be attested to by the attorneys for the Legal Aid Society, If you give a man with diabetes some sweet candy, you give him nothing. Likewise, if you offer a man a remedy which he cannot use, it is as good as offering him no remedy.
It might be appropriate at this point to call attention to a recent Supreme Court decision (Antique & Period Furniture Co. v. Lassandro, 40 Misc 2d 635), wherein it was held that although the Supreme Court may have concurrent jurisdiction *919 of summary proceedings with the Civil Court by virtue of section 701 of the Real Property Actions and Proceedings Law, it declined to take jurisdiction in favor of the Civil Court. The court dismissed the landlord’s petition, stating that the Civil Court 1 ‘ is specially equipped to handle expeditiously and completely such matters (Italics ours.)
For the reasons set forth in the decision rendered by this court on June 23, 1965 in Marluted Realty Corp. v. Decker (supra), this court holds that the Civil Court, by virtue of section 212 of the New York City Civil Court Act, does have the power, after a warrant has been executed, to reinstate into possession a tenant wrongfully evicted, even if a new tenant is in possession, as long as the Supreme Court has that power. (In this case, the premises have not been rerented; otherwise, it would have been necessary to make the new tenant a party to this proceeding.)
Accordingly, a final judgment of possession is hereby granted in favor of the tenant against the landlord herein. The warrant shall issue forthwith and shall contain the direction that the tenant be immediately restored to possession of his apartment.
Instead of bringing a separate action in the future for damages for the wrongful eviction, it is permissible for the tenant to interpose his counterclaim in the instant proceeding. On consent, the matter of fixing damages for the wrongful eviction is held in abeyance pending settlement discussions. If negotiations are not culminated by July 15, 1965, the matter may be set down for a hearing on three days’ notice for the purpose of assessing damages. In the interim the tenant has agreed to make payment of rent which has accrued to date.
This case proves, among other things, the urgent need for a change by the Legislature of the Marshal’s 24-hour notice (Real Property Actions and Proceedings Law, § 749), particularly in default nonpayment proceedings. The time element should be enlarged to at least 48 hours and possibly 72 hours. In order to avoid the repetition of the catastrophe which occurred here and to afford a tenant sufficient time to obtain an order to show cause, the court strongly recommends such amendment.