OPINION OF THE COURT
Frank M. Klinger, J.
The question presented by this case is whether the stay provided by RPAPL 751 (1), which appears to be mandatory, is of permanent duration or whether, being a "stay”, it can be limited by the court to some particular period of time.
Rasch, New York Landlord & Tenant — Summary Proceedings (vol 3, § 1419, at 254 [2d ed]) regarding the analysis of RPAPL 751 (1) states that "Upon paying into court before the issuance of a warrant the determined amount of unpaid rent * ** * together with interest, penalty, and costs, the landlord’s right to dispossess terminates, and the proceeding must be dismissed. Although this statute authorizes a stay of the issuance of a warrant if certain payments are made after the judgment, it has been held that no actual stay is involved. The payment in and of itself finally terminates the proceeding; no warrant may thereafter issue; and any warrant issued would be a nullity.”
The question presented therefore is whether this is correct or whether Rasch might be somewhat rash or overly broad in this assessment that the "stay” constitutes not simply a "stay”, but a final judgment terminating the proceeding.
At the outset we note that this matter is an eviction proceeding based upon tenant’s failure to pay rent for a period of time pursuant to a one-year written lease. Defendant defended on the grounds of "uninhabitability” and the court in fact found a partial uninhabitability but nonetheless ver *756 bally in its decision from the Bench awarded judgment to the landlord in the amount of $238.30.
Respondent thereupon tendered that amount in cash to the clerk pursuant to RPAPL 751 (1) for purposes of obtaining the stay therein provided.
Section 751 provides that:
"The respondent may, at any time before a warrant is issued, stay the issuing thereof and also stay an execution to collect the costs, as follows:
"1. Where the lessee or tenant holds over after a default in the payment of rent * * * he may effect a stay by depositing the amount of the rent due * * * and interest and penalty, if any thereon due, and the costs of the special proceeding, with the clerk of the court”.
We note at the outset that petitioner’s counsel is under the erroneous belief that nonpayment by a tenant of any amount due or found to be due by the court under a lease automatically cancels the lease and renders it null and void. Learned counsel did not alone wallow in such ignorance. This court was also of the same belief, which, to this court’s experience, has been commonly held by learned counsel throughout the City of Oswego. I have often wondered, however, if that be true as a matter of law, why some leases nonetheless specifically so provide. This one, however, does not.
That view is clearly in error, as can be seen from the fact that counsel for petitioner cites no case law whatsoever to support such a proposition, but rather makes a futile attempt to distinguish cases cited by respondent.
I agree that Young v Lucas (1 AD2d 754) cited predominantly by Rasch and respondent is inapplicable here. There, the Justice actually turned over the money paid into court to the landlord. Since the landlord received the money, the warrant was held to be a nullity.
Petitioner’s counsel in the case at bar argues that if petitioner were to accept full payment, respondent would therefore be arguing (and I might add correctly) pursuant to Young v Lucas (supra) that petitioner is not entitled to an order of eviction. The converse, however, is not a logical syllogism. Just because petitioner would not be entitled to a warrant of eviction if he does accept the money, provided full and proper tender has been offered, does not imply that because he has refused the money that he is therefore entitled to a warrant.
*757 Respondent’s other cases are well on point to that issue.
In Matter of Albany v White (46 Misc 2d 915 [Civ Ct 1965]), even though the landlord had received and then returned the proper tender, the language of the court is quite clear and unambiguous: "Where prior to the issuance of the warrant, the landlord in a nonpayment proceeding refuses to accept a timely tender of the proper amount of rent, he is not entitled to the issuance of the warrant (Matter of Vaile v. Moritt, 222 N. Y. S. 2d 290; Young v. Lucas, 1 A D 2d 754; Greenberg v. Cagle, 212 N. Y. S. 2d 767). A proper tender, as here (rent and costs) bars a final judgment; and there being no final judgment, there can be no warrant to evict thereunder.” (Supra, at 917; first emphasis the NY Civ Ct, second emphasis ours.)
In Greenberg v Cagle (212 NYS2d 767 [1961]) a final order awarding possession and a warrant was issued on December 2, 1960 based upon a tenant’s default. Thereafter the tenant moved to vacate her default and stay the execution of the warrant. On December 19, 1960 tenant’s motion was granted, the final order vacated and the proceedings set down for trial. Upon completion of the trial an order dated January 4, 1961 was entered in favor of the petitioner and the issuance of the warrant stayed to and including January 9, 1961. Tenant apparently offered payment of rent and costs to petitioner on January 10, 1961 which was refused.
The old, invalid warrant was returned on January 11, 1961 and on that date petitioner made application for a new warrant which was refused. The court upheld the refusal to issue the warrant under the circumstances. The first warrant being a nullity, the tenant had in fact tendered payment after the stay had expired but prior to the issuance of a new, valid warrant. The court held that "a warrant issued in a summary proceeding without a final order first having been made in favor of the landlord is a nullity” and that "the tender having been made prior to the issuance of a new warrant directed by the last final order and prior to the time the new warrant could have been issued by reason of the outstanding warrant, the petitioner is not entitled to the relief he seeks.” (Supra, at 769.)
The court held that "Section 1435 of the Civil Practice Act provides that a tenant against whom a final order is made may stay the issuing thereof at any time before a warrant is issued by depositing with the Clerk of the court the amount of rent due plus interest and costs. This statute affords a tenant a *758 stay even after the original stay had expired provided the tender is made prior to the issuance of the warrant or a valid demand is made for its issuance”. (Supra, at 770; first emphasis the NY Civ Ct, the second ours.)
In Vaile v Moritt (222 NYS2d 290) the trial court entered a final order on September 27, 1961 in favor of the landlord in the sum of $46.50 which provided that the issuance of the warrant would be stayed until October 2, 1961. The tenant claimed that on October 2 and before the expiration of the stay provided for in the final order, he tendered the rent to the landlord but the same was refused. The landlord obtained a warrant on October 6.
The court held that "A tender lawfully made and unlawfully refused is as effectual as if payment had been made”. (Supra, at 293.) And that "If it be established after the hearing set down by the respondent Municipal Court Justice that the tenant made a full and timely tender to the landlord of the amount of rent due to her, the issuance of the warrant under such circumstances was unlawful and a nullity.” (Supra, at 293.)
Petitioner argues that RPAPL 751 (1), (2) and (3) apply to New York City only. We cannot accept such a twisted interpretation of the section. When the Legislature wishes to write a section applicable to New York City only it specifically so states. (See, e.g., RPAPL 711.) A plain reading of section 751 from its outset through subdivision (3) clearly indicates that like any law of the State it is applicable throughout the State.
Subdivision (4) simply provides an additional method by which a tenant outside of New York City may obtain a stay without necessarily paying the full amount due into court on the grounds that "the application is made in good faith; that the applicant cannot within the neighborhood secure suitable premises similar to those occupied by him and that he made due and reasonable efforts to secure such other premises, or that by reason of other facts it would occasion extreme hardship to him or his family if the stay were not granted.” (RPAPL 751 [4] [a].)
No application for a stay under subdivision (4) has been made herein. We also note the case of Roosevelt Nassau Operating Corp. v Camy Holding Corp. (50 Misc 2d 906) which applied RPAPL 751 (1) to an area outside of New York City. There as here the landlord claimed that " '[t]he tenant has deposited into court the amounts claimed by the landlord to *759 be due and owing as rent. This should not prevent the landlord from recovering possession of the premises in this action.’ ” (Supra, at 906.)
Quoting subdivision (1) of section 751, the court went on to quote the Appellate Division, Second Department, in Flewellin v Lent (91 App Div 430, 432-433) to the effect that " 'The statute specifically provides for this after the final order is made, and this is clearly upon the theory that the right to possession is to be determined after a trial of an issue, and then the tenant is given an option of paying the rent, with the costs, or of delivering up possession of the premises.’ ” (Supra, at 907; emphasis added.)
" 'In the case now before us the tenant elected not to try the issue, but to concede that he owed the amount claimed, and placed the fund in the custody of the court, with an amount sufficient to pay the costs, and there is nothing left for the court except to dismiss the proceeding.’ ” (Supra, at 907; emphasis added.)
The District Court then approvingly cites the Rasch quote given at the outset of this opinion.
Respondent, however, to utilize a section which requires literal compliance, must comply literally. Section 751 requires a respondent to obtain the stay to have deposited the amount of the rent due and the costs of the proceeding. Petitioner claims the costs to be $50.45, claiming $25 for "issuing notice of petition” and $25.45 for "prospective marshall’s fee”. Petitioner does not in his legal memorandum mention the "prospective marshall’s fee” or indicate to the court under what section of the law he believes he is entitled to it or how it was computed. Under UCCA 1903 (m) it does not appear authorized. I therefore decline to grant it.
The $25 fee for issuing the notice of petition was simply sent by petitioner to the court clerk. UCCA 1903 (d) provides that the petitioner shall be allowed as costs the sum of $1.50. UCCA 1903 (m) provides "Costs in a summary proceeding to recover possession of real property shall consist of the sums specified in subdivision (d) of this section plus, as a disbursement, if paid, the fee provided for the issuance of a notice of petition by § 1911 (a) (11)” and that "[s]uch costs shall be exclusive in such proceeding”. (Emphasis added.)
UCCA 1911 (a) (11) provides for the clerk to collect a fee of $25 "[f]or issuing a notice of petition in a summary proceeding”. Section 1911 (a) is entitled "Fees payable to the clerk.” It *760 enumerates 11 various fees payable to the clerk, all for various services performed by the clerk.
We note RPAPL 731 provides that a notice of petition may be issued only by an attorney, Judge or the clerk of the court. Therefore pro se litigants it would seem would have to rely upon the clerk of the court and would owe a fee of $25 if the clerk was to have issued the petition. Petitions issued by an attorney, which was the case here, are simply not issued by the clerk.
The clerk further informs me that a very recent memorandum from OCA, which she cannot presently locate, has indicated that fees for "issuing” summary proceedings which are in fact issued by the attorneys are not properly collectable and are to be returned. She is therefore arranging for return to petitioner’s counsel the $25 fee paid.
This leaves us with the sum of only $1.50 for plaintiff’s costs, which was quite properly and accurately so computed by respondent. Respondent alleges that I did not grant a judgment for costs on the day of trial. True enough. I told petitioner’s counsel to submit a proposed judgment. He has with $50 costs. But I am today granting judgment to the petitioner in the amount of $238.30 together with $1.50 in costs, altogether in the sum of $239.80 and a copy of said judgment is enclosed herewith.
If the respondent does in fact pay the $1.50 in costs to the clerk, I would think that the judgment might then be marked "satisfied”.
Had the respondent paid into court the full amount of the judgment from the Bench and the costs, no written judgment or warrant could then be issued.
As to interest: CPLR 5001 (a) would appear to leave the issue to the court’s discretion. Although the rent due for which the judgment was issued would have been due December 1, 1987 and therefore interest could be computable beginning that date, we must also remember that a breach of warranty of habitability occurred in October and November, for which petitioner could arguably owe respondent some amount of "interest”. Respondent of course tendered payment of the principal in court. I made no award of "interest” in my verbal decision and I make none now.
But what concerns petitioner, respondent and counsel and what the argument is all about is whether or not a warrant should now be issued. Respondent of course submits that she *761 will immediately pay any judgment granted by this court for costs, but that is simply not what the law requires. Petitioner’s current rights under the RPAPL, such as they are, cannot be abrogated because of what respondent says she will do— regardless of how obvious it is that she will very likely do as she says.
RPAPL 749 states: "Upon rendering a final judgment for the petitioner, the court shall issue a warrant”. (Emphasis added.) This language appears to be mandatory and does not provide for an exception for a respondent who professes a willingness to pay the "judgment” and/or has already paid the entire judgment except for costs into court.
But the question becomes, what about RPAPL 751? Respondent simply has not complied with RPAPL 751 (1) because she has not yet paid to the clerk the costs of this special proceeding. Unfortunately for respondent, if she wishes to take advantage of a section which requires a certain result if literal compliance be had, then she must literally comply or risk losing the benefit thereunder. As my old high school math teacher used to say "close is only good in horseshoes”.
Therefore the stay provided under section 751 is not required. Technically speaking under the language of section 751 previously quoted it is not even permissive, since the costs have not been paid. We can and did, however, grant a stay under the balance of the language of section 751 (1) which permits the stay "by delivering to the court or clerk his undertaking to the petitioner in such sum as the court approves to the effect that he will pay the rent, or such taxes or assessments, and interest and penalty and costs within ten days, at the expiration of which time a warrant may issue, unless he produces to the court satisfactory evidence of the payment.”
However to the extent that the stay is not in fact mandatory but permissive, it is equitable in nature. Of course one cannot help but take cognizance of the obvious fact that the respondent placed into court moneys only $1.50 short of that which was required. The almost obvious inference to be drawn is that if we were to grant a further stay of the warrant conditioned upon payment of the additional money the tenant would certainly pay it.
However that is not the only equitable consideration. Counsel for petitioner alleges — and respondent has not disputed, that respondent has paid not any rent for the month of *762 January 1988. In this case whether the premises be fully or partially habitable or even completely uninhabitable, it does not appear equitable to this court to allow the tenant to simply live there in perpetuity free of charge. It appears more equitable for the tenant to find another, more suitable dwelling and for the landlord to then be able to do as he wishes with his property.
We did in any event grant a discretionary stay through the month of December only which permitted the tenant to remain through the holidays and into the new year and to continue to occupy the premises for the period of time for which she had tendered payment.
Although perhaps not in accord with petitioner’s wishes, I feel that such a stay was eminently reasonable, proper and just. I do not believe it to be reasonable, proper or just that the tenant has apparently stayed the month of January and into February without payment or tender of any rent, nor do I believe it to be equitable to permit the tenant to continue to stay through February and for the balance of the term without tender or payment of rent or suitable security for such rent, if any, as may be due.
My stay was specifically stated to be for the month of December 1987 only. I believe that such a stay is, as the statute states, a "stay” only — and not as Rasch states, an end to the proceeding. In any event, not having paid the costs she was not entitled to such a stay as a matter of right and her discretionary stay expired December 31.
I am accordingly today signing the warrant of eviction sought by petitioner and a copy will be mailed along with this decision.
Respondent also applies for a stay under CPLR 5519.
I believe that even a cursory reading of that section indicates that the respondent is entitled to such a stay if she posts an undertaking in an amount to be fixed by the court and it is therefore incumbent upon this court to fix such an amount. The respondent it would appear has not paid rent for January 1988 and as far as we know not for February 1988 either. Since CPLR 5519 (a) (6) also requires that the undertaking be given that the appellant will not commit or suffer to be committed waste and noting that there is a $400 security deposit, I hereby fix the total undertaking in the amount of $1,000. In the event that the respondent posts such an undertaking prior to execution of the warrant which I am signing *763 herewith, the petitioner will then have a total of $1,400 worth of security which may be put towards any damages the petitioner might sustain due to physical damage or waste to the property and/or unpaid rent of whatever amount may be due. This seems reasonable to me considering the possible length of the appeal. While this court is not unmindful of the fact that the appeal could take much longer than simply the month of February, this undertaking is of course applicable to this proceeding only and is without prejudice to any proceeding the landlord may bring against the tenant for unpaid rent, violation of lease or otherwise for any period of time occurring in 1988.